AMERICAN SECURITY INSURANCE COMPANY, demandante y recurrida, *v.* JOSÉ E. OCASIO RAMOS y THE INSURANCE COMPANY OF PUERTO RICO, demandados y recurrentes.

*Número:* O-73-135    *Resuelto:* 28 de marzo de 1974

*Jaime Sifre Rodríguez,* abogado de los recurrentes; *Córdova González & Toledo,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se trata de una reclamación por la pérdida de un vehículo de motor entregado para un trabajo de pintura al dueño del Garage Ocasio y que fue hurtado de dicho garage en horas de la madrugada.

El vehículo hurtado pertenecía al Sr. J. L. Berríos, y fue originalmente adquirido mediante préstamo condicional otorgado por la San Juan Finance Company. Para la fecha de los hechos el balance diferido del mencionado préstamo ascendía a $2,305.77.

Una vez notificada del hurto, la financiera procedió a gestionar del Sr. Berríos una cesión de todo derecho y acción que tuviera éste sobre el referido vehículo. Tan pronto la obtuvo, fue compensada por su compañía de seguros por el monto del balance diferido del préstamo, subrogándose la compañía aseguradora en todo derecho y acción del asegurado sobre el referido vehículo. Incoó reclamación contra el dueño del garage y su aseguradora por el monto del balance diferido.

Alegó que el dueño del garage incurrió en descuido o negligencia al permitir que se hurtara el vehículo depositado en su taller. Alegó asimismo que la compañía de seguros codemandada había expedido una póliza vigente a la fecha de los hechos que cubría la situación de autos.

El Tribunal Superior confirmó la sentencia que dictó el Tribunal de Distrito declarando con lugar la demanda. Acordamos revisar.

Las partes aceptan que el contrato celebrado fue uno de depósito. Dispone el Código Civil en cuanto al contrato de depósito que "el depositario está obligado a guardar la cosa y restituirla, cuando le sea pedida, al depositante, o a sus causahabientes, o a la persona que haya sido designada en el contrato. Su responsabilidad, en cuanto a la guarda y la pérdida de la cosa se regirá por lo dispuesto en la Parte I de este subtítulo." (Art. 1666.) Y en la Parte I del Subtítulo 4, establece el Art. 1047 que "[e]l obligado a dar alguna cosa lo está también a conservarla con la diligencia de un buen padre de familia." Se repite este mismo concepto en el Art. 1057 al disponer: "La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia." También es pertinente a la cuestión que consideramos lo ex-

puesto en el Art. 1137 al efecto de que "siempre que la cosa se hubiese perdido en poder del deudor, se presumirá que la pérdida ocurrió por su culpa, y no por caso fortuito salvo prueba en contrario."

En *P.R. & American Ins. Co.* v. *Durán Manzanal,* 92 D.P.R. 289 (1965), citamos de los comentaristas del Código Civil de España en cuanto al contrato de depósito, lo siguiente:

" '. . . El sistema tradicional, reflejado en los textos romanos y en nuestra legislación de Partidas, consistía en imponer al depositario, como regla general, únicamente las responsabilidades del dolo y de la culpa lata, pero atribuyéndole, en casos especiales, las de la culpa leve y aun las del caso fortuito (si se hubiere estipulado así). El Código francés adoptó un sistema distinto, consistente en imponer al depositario, por regla general, no la culpa apreciada en abstracto (diligencia de un buen padre de familia) sino la culpa *in concreto* (diligencia que la persona misma del depositario acostumbra poner en el cuidado de sus cosas), aunque restableciendo en ciertos casos excepcionales la aplicación del principio de la culpa leve en abstracto. Pues bien, nuestro Código español no ha hecho suyo ninguno de los anteriores sistemas. Se limita a declarar que la responsabilidad del depositario en cuanto a la guarda y la pérdida de la cosa se regirá por lo dispuesto para las obligaciones en general en el título I del libro IV—art. 1766, párrafo segundo—[1666 nuestro] y esto equivale a imponer al depositario la diligencia que se exprese en el contrato o, en su defecto, la correspondiente a un buen padre de familia—art. 1104—[1057 nuestro], sin la distinción de casos ni las clasificaciones de la culpa que se admitían en la doctrina tradicional': 4 Castán—Derecho Civil Español Común y Foral 620 (7a. edición Reus 1952). Nuestro Código—dice Puig Peña—'Se limita a decir que la responsabilidad del depositario en cuanto a la guarda (y a la pérdida de la cosa), se regirá por lo dispuesto en el título I del libro IV; o ser, que se remite en esta cuestión a la teoría general de la responsabilidad en las obligaciones—arts. 1100 al 1107—[1053–1060 nuestros]. Esto equivale a imponer al depositario, según dijimos, la actividad prometida en el contrato o deducida de la naturaleza de la obligación y propia de un buen padre de familia. Siempre, pues, que ello no se

observe, incurrirá en responsabilidad, sin hacer caso de las clasificaciones que admitía la doctrina clásica.' IV-II Puig Peña: *Tratado de Derecho Civil Español* 434. . . ."

Antes de entrar a considerar si el depositario cumplió con la obligación que le impone el Código Civil en los artículos antes mencionados, es necesario exponer qué se entiende por el concepto tantas veces repetido en el Código, de "la diligencia de un buen padre de familia."

Castán al considerar el Art. 1104 del Código Civil Español equivalente al 1057 nuestro, expone:

"Nuestro Código Civil establece como criterio general para los casos en que en la obligación no se exprese la diligencia que ha de prestarse en su cumplimiento, el que ha de exigirse la que correspondería a un buen padre de familia (artículo 1104, apartado 2º), que se toma como tipo medio o normal de persona diligente. En esto el sistema del Código Civil está influido por el sistema romano, del que toma el tipo de la culpa leve. Pero es de tener en cuenta que al definir la culpa el art. 1104, ap. 1º, en los términos ya expuestos, parte de un punto de vista subjetivo, que hará que sean los Tribunales en cada caso particular los que habrán de resolver cuál era la diligencia procedente y, por ende, cuál es la culpa de que ha de responder el deudor. . . . En conjunto significa este sistema de progreso, por la flexibilidad con que permite adaptar la idea de la culpa a cada especie concreta." 3 Castán, *Derecho Civil Español, Común y Foral* 169 (décima edición 1967).

Y Don Federico Puig Peña en su artículo Culpa Civil, *Nueva Enciclopedia Jurídica*, Tomo VI, a la pág. 107 expone:

". . . Después del Código sólo se debe prestar aquella diligencia que exija la naturaleza de la obligación, no en si misma, sino teniendo en cuenta las circunstancias de las personas, tiempo, y lugar. Solamente a título supletorio, es decir, cuando de la obligación nada se desprenda, o ésta nada diga, exigirá la diligencia que corresponda a un buen padre de familia, que representa el tipo medio de diligencia normal (art. 1104 párr. 2º). En cada caso, pues los Tribunales serán los llamados a decidir cuál era la diligencia que se debía haber empleado, y si por no prestarla el deudor ha incurrido en mora."

■ Así vemos que el Código al emplear el concepto "diligencia de un buen padre de familia" tuvo el propósito de dejar a los tribunales que en cada caso particular determinen cuál es la diligencia procedente, que generalmente debe ser la que hubiera tomado el "tipo medio o normal de persona diligente."

Procede ahora determinar si el depositario actuó como lo hubiera hecho una persona tipo medio o normal.

La prueba fue al efecto de que para la fecha del hurto, el Garage Ocasio estaba completamente rodeado por una verja de alambres de las conocidas como "cyclone fence"; que sobre dicha verja y a la redonda había alambre de púa; que habían tres portones de acceso, los cuales se aseguraban todos los días al final de la jornada con una cadena gruesa y candado grande; que para la víspera del hurto, el recurrente cerró personalmente el portón, según era su costumbre hacerlo. Asimismo la prueba estableció que era el primer vehículo que hurtaban del Garage Ocasio.

El recurrido argumenta que las medidas tomadas son insuficientes para relevar a un depositario de responsabilidad. Sostiene que se debieron haber tomado medidas adicionales, tales como mantener un celador, o perros de vigilancia.

■ Aplicando la ley según antes la expusimos a la situación de hechos del presente caso, vista la evidencia reseñada, es evidente que el depositario en este caso cumplió con su obligación de guardar la cosa como un buen padre de familia. La presunción de negligencia de que habla el Art. 1137 del Código Civil fue rebatida por la evidencia aportada. No hay base para responsabilizar al depositario. Tomó las precauciones que eran razonables tomar. Nos preocupa el auge inusitado que ha cobrado en Puerto Rico el hurto de vehículos de motor. La Prensa diaria nos mantiene al tanto de los constantes partes policíacos en que se dramatiza en forma alarmante cómo los vehículos hurtados son las más de las veces utilizados para cometer otros delitos contra la persona

y contra la propiedad, o para enriquecimiento de especuladores sin escrúpulos que se dedican a desmantelarlos para su venta en piezas o que los reforman y remodelan para venderlos más adelante. Esta crítica situación exige que los depositarios de vehículos de motor ejerzan en el futuro un mayor celo en la guarda de los vehículos de motor que se le confían tomando las precauciones adicionales que un buen padre de familia adoptaría dentro de las actuales circunstancias.

No mediando responsabilidad legal del depositario, tampoco procede la reclamación contra su compañía aseguradora. Esta se había comprometido a pagar sólo en caso que el asegurado fuera responsable. Así se estipuló en la póliza. (¹)

*Se revocará la sentencia que declaró con lugar la demanda y se dictará otra declarándola sin lugar.*

---

(¹) Dispone así la póliza:
"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

E. .    .    .    .    .    .    .    .
F. loss to an automobile caused by theft of the entire automobile;
G. .    .    .    .    .    .    .    .
H. .    .    .    .    .    .    .    .

occurring while such automobile or other property is in the custody of the insured for safekeeping, storage, service or repair. . . ."