CONSUELO ESTREMERA COLÓN y RAÚL RALAT ESTREMERA, demandantes y recurridos, *v.* INMOBILIARIA RAC, INC., CNA CASUALTY OF PUERTO RICO, demandados y recurrentes.

*Número:* R-80-154 *Resuelto:* 17 de junio de 1980

---

[3] J. Benítez, *La Función Social del Abogado*, 17 Rev. C. Abo. P.R. 233 (1957).

*Dubón, González & Vázquez* y *Mario Arroyo Dávila*, abogados de los recurrentes; *Frankie Jiménez Santoni*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Israel Ralat Fernández estaba empleado como mensajero de Benjamín Acosta, Inc., una firma de ajustadores de seguros con oficinas en la segunda planta de un edificio de tres pisos en el Núm. 329 de la calle Recinto Sur de San Juan. La demandada recurrente, Inmobiliaria Rac, Inc., era la dueña y administradora del citado edificio y había dado en arrendamiento a Benjamín Acosta, Inc., su local de oficina, siendo obligación de la arrendadora el mantenimiento del edificio y, como parte de éste, el alumbrado de la escalera consistente en dos bombillas. El 21 mayo, 1975, la Autoridad de Fuentes Fluviales desconectó, por falta de pago, la línea que suplía luz a la escalera, y Acosta, en dos ocasiones, requirió a su arrendadora que corrigiera la situación que la sala de instancia describe como deficiente, aun cuando no de total oscuridad durante las horas del día en que la primera sección de la escalera que conducía de la entrada, por la calle, al segundo piso, recibía alguna luz natural de dicha puerta de entrada.

El 30 mayo, 1975, a las 10:20 a.m., el mensajero Ralat regresaba del banco a la oficina con la nómina de $4,000, cuando fue acuchillado y robado del dinero por un asaltante que escapó en automóvil, falleciendo la víctima ese mismo día como consecuencia de herida punzante que laceró su corazón y provocó un hemotórax bilateral masivo.

Los familiares de la víctima demandaron a la arrendadora Rac y a su aseguradora en daños y perjuicios, y la

sala de instancia, al concluir que aquélla había facilitado el asalto y muerte del empleado al dejar la escalera sin bombillas por nueve días, estimó la demanda y las condenó a pagar indemnización de $75,611.80, $5,000 de honorarios, más costas e intereses. Encontró el ilustrado juzgador una avenida de causación entre las sombras de la escalera y la muerte del mensajero, y concluyó de mayor probabilidad que el crimen no se hubiera cometido en la escalera, de haber habido alumbrado eléctrico.

Al recurso de la demandadas, el 24 abril, 1980, expedimos orden para que los demandantes recurridos muestren causa por la cual no deba moderarse la responsabilidad por negligencia de la recurrente, dueña del edificio, y reducir proporcionalmente las partidas de daños adjudicadas; o revocar de un todo la sentencia.

En su escrito de contestación los recurridos hacen un loable esfuerzo por sostener la corrección de la sentencia aportando el nuevo argumento de que la garantía de habitabilidad del edificio, (1) que es prestación obligada del arrendador, incluía en este caso la disuasión de asaltantes, manteniendo las bombillas encendidas. Esa teoría se ha sostenido en New Jersey (2) por falta del arrendador de instalar una cerradura en la puerta de entrada en un caso, y por cerradura defectuosa en otro, cuando el edificio radica en zona de alta criminalidad y se ha cometido anteriormente en los predios delito de robo, situación que no se da en el presente caso.

El incremento de la violencia, el reto del criminal a la paz y sosiego del pueblo y la creciente probabilidad de que una persona sea víctima de un atentado contra su vida, su libertad o su propiedad, es una enfermedad del medio ambiente en que las personas

---

(1) *Cf. Pérez v. Gandía*, 32 D.P.R. 562 (1923); *Miranda v. Méndez*, 50 D.P.R. 850, 853 (1937).

(2) *Trentacost v. Brussel*, 412 A.2d 436 (1980); *Braitman v. Overlook Terrace Corp.*, 346 A.2d 76 (1975).

nacen, se educan, trabajan o simplemente existen. Es condición o circunstancia de la atmósfera general en que se desarrolla la gestión vital de cada miembro de la sociedad; y es, primordialmente, problema de seguridad pública y responsabilidad del Estado, la única entidad con los recursos y la fuerza necesarios para mantener la paz y la majestad de la Ley. Si tal es el ámbito en que se vive y se contrata, y tal la indefensión del pueblo contra ese tercero violento, los contratantes no pueden ser responsables de la *irrupción* del *crimen* en el *campo* de sus negocios, a menos que éstos sean de los que, por su naturaleza esencial, vengan obligados a ofrecer un grado de protección y seguridad independiente del que puedan proveer las agencias de seguridad pública. Así, el hotel, ([3]) que básicamente duplica el hogar, el hospital y la escuela, sin agotar la lista, vienen obligados a mantener unas medidas razonables de seguridad en protección de sus huéspedes, pacientes y estudiantes, que no tienen que suplir otros contratantes y empresarios, cuya actividad no absorbe necesariamente, en el ámbito de ejecución del contrato, la protección de partes y terceros contra ataques criminales. El Código Civil tiene provista la norma de responsabilidad relativa, conjugada con la clase de actividad, en su Art. 1057 (31 L.P.R.A. sec. 3021) que ordena: "[L]a culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. . . ."

El deber de indemnizar presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización. ([4]) La causalidad está necesariamente limitada por el ámbito de la obligación,

---

([3]) *Pabón Escabí* v. *Axtmayer*, 90 D.P.R. 20, 27 (1964).

([4]) Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., 1967, T. 3, pág. 193; *López* v. *Hosp. Presbiteriano, Inc.*, 107 D.P.R. 197 (1978).

pues es infinita la serie de daños que, en interminable encadenamiento, pueden derivarse del incumplimiento de una obligación. Falta nexo causal entre la tardanza de la arrendadora recurrente en reponer la bombilla que alumbraba la escalera y el asesinato del mensajero de la compañía ajustadora de seguros. Dicha omisión no constituye conducta afirmativa que aumente considerablemente el riesgo de daño al demandante por el acto criminal de un tercero, en cuyo caso podría imponerse responsabilidad al demandado.

■ La ausencia de causación en la conducta general de la arrendadora demandada es evidente. Ella no creó ni agravó la situación sobre la cual actuó el tercero para producir el daño. Dicha situación es producto de la prevaleciente falta de seguridad pública ante la insuficiencia de los medios del Estado para controlar la violencia y el crimen. El arrendador que contrató bajo un régimen de derecho civil, en circunstancias de personas, tiempo y lugar que no acusan como riesgo normal del contrato un atentado a la vida de los usuarios del edificio arrendado, no viene obligado a prevenir ese tipo de daños. (5)

■ La falta de luz en la escalera, si bien es negligencia imputable a la arrendadora, lo es en relación con el riesgo usual previsible de tal condición peligrosa, como una caída, un resbalón, un tropezón con un objeto en el piso. Aun cuando el demandado haya creado la situación de peligro sobre la cual actúa una tercera fuerza interventora que produce el resultado dañoso, la responsabilidad de aquél por negligencia no se extiende a intervenciones ajenas al tipo de riesgo creado. Prosser explica la

---

(5) Prosser considera causa anulativa de responsabilidad el acto intencional o criminal contra el cual ningún estándar razonable de cuidado exigía que el demandado se mantuviera alerta y en guardia, como un imprevisible atentado personal contra el demandante y actos vandálicos contra la propiedad. *The Law of Torts*, 4ta ed. (1971), págs. 282–283.

regla, diciendo: "Normalmente hay mucha menos razón para anticipar actos de un tercero que son maliciosos e intencionalmente dañinos, que los de mera negligencia; y esto es más cierto todavía, si, como usualmente ocurre, tales actos son de naturaleza criminal. Bajo todas las circunstancias ordinarias y normales, faltando razón para esperar lo contrario, la persona puede razonablemente proceder bajo la presunción de que los demás obedecerán la ley penal. Bajo semejantes circunstancias ordinarias, no es razonable esperar que alguien arranque una vía de ferrocarril, haga volar un polvorín, falsifique un cheque, empuje a otro hombre dentro de una excavación, ataque a un pasajero en el tren, o asalte una bolera y mate a un cliente. A pesar de que estas cosas ocurren, como lo sabe cualquiera que lea los periódicos, todavía son tan improbables en cada instancia en particular, que el peso de mantener precauciones continuas contra ellas excede el riesgo aparente." (⁶) *The Law of Torts*, 4ta ed. (1971), págs. 173–174.

 Necesariamente ha de haber un límite a la responsabilidad del demandado, opuesto a la infinidad de causas independientes capaces de intervenir para cambiar

---

(⁶) Se dan, no obstante, otras situaciones en las que recae sobre el demandado una responsabilidad especial por la protección del demandante, o en las que una tentación u oportunidad especial de conducta criminal propiciadas por el demandado, le imponen la obligación de tomar precauciones contra ellas. La responsabilidad por protección puede surgir de un contrato mediante el cual el demandado se ha obligado a proveerla; o puede fundarse en alguna relación entre las partes, como porteador y pasajero, hotelero y huésped, invitante y visitante en negocios, escuela y discípulo, patrono y empleado, arrendador y arrendatario, y sin duda, otros más. En todas estas situaciones, sin embargo, habrá responsabilidad sólo si el demandado es negligente en no tomar precauciones contra el posible criminal; esto es, si el riesgo previsible es de dimensión irrazonable comparado con el peso de tomarlas. Así, una prisión no viene obligada a extremar su vigilancia de un falsificador, sin récord de violencia, para protección del demandante; una ventana sin asegurar la cerradura no da lugar a riesgo indebido de escalamiento; y a un porteador no se le exigirá especial precaución en una zona aparentemente segura. Prosser, *op. cit.*, págs. 174–176.

la situación original de riesgo creada por su negligencia. Se pregunta Enneccerus: "¿Acaso el sastre que retrasa la entrega de un abrigo de viaje que se le había encargado tendrá que responder realmente si sobreviniera a su cliente un accidente ferroviario a virtud de haber aplazado el viaje por ese motivo?" (7) El límite jurídico, y práctico, al interminable encadenamiento de causas por las que pueda responsabilizarse al demandado lo señalan aquellas causas interventoras comprendidas en el ámbito de riesgo previsible o que al menos tienen alguna razonable conexión con el mismo. El acto criminal que segó la vida del mensajero causante de los demandantes recurridos es riesgo extraño, no comprendido ni conectado con la negligencia de la arrendadora en no reinstalar el alumbrado eléctrico.

La dificultad de precisar cuándo se da la relación de causalidad y cuáles son sus límites; cuándo deba estimarse que el hecho productor del daño es causa jurídica que según su naturaleza general aparezca como adecuada para engendrar ese daño, lleva a Castán Tobeñas a concluir: "Tales teorías tienen sólo un valor relativo. En realidad, como dice el propio Enneccerus, 'la difícil cuestión de hasta dónde llega el nexo causal no podría resolverse nunca de una manera plenamente satisfactoria mediante reglas *abstractas*, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'." Castán Tobeñas, *op. cit.*, pág. 195.

Igual criterio ha expresado el Tribunal Supremo de España ante la serie casi infinita de daños en cadena que puedan derivarse del incumplimiento de una obligación, al declarar, en su sentencia de 25 enero, 1933: " 'la Jurisprudencia no puede tomar parte en la discusión filosófica

---

(7) Enneccerus-Ludwig, *Tratado de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1954, T. II, Vol. I, pág. 66.

que agrupa de un lado a los partidarios de la causa eficiente y de otro a los que más bien se apoyan en el principio de razón suficiente, ni adoptar una posición intermedia a favor de la *conditio sine qua non*, o del factor predominante, o de la circunstancia principal o de cualquier otro momento causal propugnado por técnicas extranjeras, y acaso bastaría para orientar a los Tribunales de justicia en la resolución de los problemas concretos, llamar su atención hacia el pensamiento compensador de la ley cuando trata de remediar la lesión sobrevenida en las facultades o patrimonio de una persona a consecuencia de la acción u omisión ajena con la indemnización exigible al autor de ésta; o todavía con menor compromiso, sería suficiente encaminar su actuación hacia la valoración de las condiciones o circunstancias que el buen sentido señalara en cada caso como índices de responsabilidad dentro del infinito encadenamiento de causas y efectos'."

Tampoco puede vincularse la deficiencia de alumbrado en la escalera al acto criminal de asesinato y robo. Que el crimen se hubiese producido con o sin alumbrado como acto independiente de la conducta de la arrendadora, es premisa innegable del diario vivir que nos muestra ataques similares perpetrados en plena vía pública a la luz del día, así como en los profusamente alumbrados establecimientos de comercio. El malhechor de nuestros días, de acentuado desprecio por la ley, hace tiempo prescindió de la oscuridad y las sombras como aliados.

La señalada ausencia de causación entre el incumplimiento por la demandada de su deber contractual y la conducta criminosa del tercero interventor, hace innecesario penetrar en el campo de posibilidades, saturado de especulación, y determinar si, de haber luz, el occiso hubiese podido defenderse o evadir el ataque, o si una bombilla encendida hubiese disuadido al agresor, y aun si el atentado no hubiese terminado la vida de este trabajador.

*Con estos antecedentes y fundamentos, se expedirá el auto, y la sentencia recurrida será revocada.*

Los Jueces Asociados Señores Torres Rigual y Negrón García no intervinieron.