The TRAVELERS INDEMNITY COMPANY, Plaintiff,

v.

S. KLEIN OF PUERTO RICO, INC. d/b/a S. Klein Die Cutting of Puerto Rico, Inc., Defendant.

Civ. No. 85–1739CC.

United States District Court, D. Puerto Rico.

Dec. 16, 1987.

Wilfredo Segarra-Miranda, Bird & Bird, San Juan, Puerto Rico, for plaintiff.

Enrique N. Vela-Colón, Montañez & Alicea, Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is a claim filed by an insurance company, The Travelers Indemnity Company, subrogated as to all claims, causes of action, and rights of recovery of its insured, Inner Secrets, Inc., for recovery of contractual damages. Allegedly the damages arise from the theft of some of their merchandise which was under the exclusive custody, control, and possession of defendant S. Klein of Puerto Rico, Inc. Plaintiff is a corporation organized and existing under the laws of the State of Connecticut, with its principal office and place of business in Hartford, Connecticut. Defendant is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal office and place of business in Aguas Buenas, Puerto Rico. Jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. Section 1332.

It is alleged that the theft was caused exclusively by the negligence of the defendant, its agents and/or employees in failing to take due precautions and diligent acts necessary to protect said merchandise against burglary, theft and loss. Moreover plaintiff alleges that defendant failed to act as a prudent and diligent father of a family, thus violating the standard of care imposed by the laws of Puerto Rico, and failed to comply with its contractual obligations. Defendant denied plaintiffs' allegations, and contended that it took all appropriate measures to defend the premises and, consequently, all merchandise, machinery, equipment, inventory and raw materials contained therein. Moreover, it was alleged that it had acted as a prudent and diligent father of a family under the circumstances, and that the theft was out of its control; that it could not be held responsible for the criminal acts of third parties. In the event that the court found that it

had breached its duty and, as such, was liable for the theft of the merchandise, defendant alleged that plaintiff released it of any liability arising from any "... break in (robbery) or fire or water damage due to an outside nature." (Defendant's Exhibits V, VI, and VII.)

The Court finds that the following acts were proven by the uncontradicted allegations, documents and testimony admitted in evidence. Inner Secrets sells ladies undergarments. Four to six weeks prior to the incident Inner Secrets sent defendant some 'cut goods' to be assembled. The particular garments object of this suit were brassieres and girdles. Between June 29 and July 2, 1984 burglars broke into the premises occupied by defendant in its manufacturing operations and stole certain merchandise, including some belonging to Inner Secrets.

After being notified by phone that a theft had occurred within the premises and that a physical inventory was under way, Inner Secrets received a letter dated August 20, 1984 from defendant confirming the incident and informing that some of its merchandise had been stolen. Inner Secrets held defendant directly responsible for the loss. Plaintiff paid Inner Secrets the actual amount of the loss, which was determined to be $9,720.22 and became subrogated as to all claims, causes of action, and rights of recovery of its insured, with respect to this incident. Plaintiff claimed reimbursement from defendant on many occasions, but it refused to pay.

## CONTRACTUAL RELATIONSHIP AND STANDARD OF CARE

In diversity cases, federal courts apply the law of the state, in this case the law of the Commonwealth of Puerto Rico, as stated by its legislature and interpreted by its highest court. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To ascertain the rights and responsibilities of the parties involved in this suit, we must first determine the nature of their contractual relationship.

When one party binds itself to execute a work or to render a service to another party, like defendant bound itself to receive materials and return the same in finished form, a contract of lease of work and services arises. Article 1434 Civil Code, 31 L.P.R.A. Section 4013. Within this contractual relationship, duties arise other than those of specific performance and satisfaction of the price, especially when the debtor is to perform work on something which is under his custody. When a party receives something that belongs to another with the obligation of keeping and returning it, a contract of deposit arises. Article 1658 Civil Code, 31 L.P.R.A. Section 4621. Custody is the essence of the contract of deposit. It is a service, or *facere*, which consists in engaging in the necessary acts to protect and conserve the object of the contract. The rights and responsibilities arising from the contract of deposit also pertain to other contractual relationships where custody is involved. They arise whenever there is an obligation of giving and returning something. Custody is an essential part of such relationships in which possession and some of the faculties of ownership are given to someone else. II L. Diez-Picazo, *Sistema de Derecho Civil*, 494 (Tecnos 4th Ed. 1985). *See e.g. M.A. Carib. Corp. v. Carib R., Inc.*, 115 D.P.R. 681–684 (1984) (a bailee-bailor relationship arises when one party gave another a truck for rustproofing).

Article 1666 of the Civil Code, referring to the obligations of the bailee, provides: "[h] is liability, with regard to the keeping and loss of the thing, shall be governed by the provisions of Part I of this subtitle [31 L.P.R.A. Sections 2991–3344]." This article refers to Article 1057 of the Civil Code which establishes what constitutes fault or negligence of the debtor in these terms:

The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation, and which may pertain to the circumstances of the persons, time, and place. Should the obligation not state what conduct is to be observed in its fulfillment, that observed by a good father of a family shall be required.

31 L.P.R.A. Section 3021.

One of the consequences of such obligation is a presumption of loss by fault of

the bailee. "Whenever the thing should be lost, when in the possession of the debtor, it shall be presumed that the loss occurred by his fault and not by a fortitous event, unless there is proof to the contrary and without prejudice to the provisions of section 3013 of this title."[1] Article 1137 Civil Code, 31 L.P.R.A. Section 3192. *Double AA Prop. Corp. v. E.L.A.,* 109 D.P.R. 235, 238–239 (1979). This presumption is rebutted when the debtor, in this case defendant-bailee, proves that the reason for such loss was caused by a fortuitous or unforeseen event. "No one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable, with the exception of the cases expressly mentioned in the law or those in which the obligation so declares." Article 1058 Civil Code, 31 L.P.R.A. Section 3022.

The Supreme Court of Puerto Rico in *P.R. & American Ins. Co. v. Duran Manzanal,* 92 P.R.R. 279 (1965), established the requisites for determining whether any event is a fortuitous event (casus fortuitus):

(1) That the event or occurrence producing it is not contingent on the will of the person doing the service, or chargeable to the latter it having originated in an accident *fatum fatalitas;* (2) that the event be unforeseen or inevitable, in the sense of not being within the scope of the reasonable and customary diligence of the person under obligation; (3) that the nonperformance presupposes impossibility and not mere difficulty.

92 P.R.R. at 283.

This opinion, citing with approval various Spanish commentators, among them Castán, Puig–Peña and Manresa, made clear that the Spanish Civil Code did not make any distinction between cases and classifications of negligence admitted in the Roman texts, the Law of Partidas, or the French Civil Code. The bailee is imposed that standard of care contained in the contract, and, if the contract is silent in this respect, the standard is that of a good father of a family according to the circumstances. This represented great progress, in the opinion of Castán, since it affords the court flexibility to adapt the concept of liability to each specific instance.

This view was adopted by the Supreme Court of Puerto Rico in *American Sec. Ins. Co. v. Ocasio,* 102 D.P.R. 166, 169–170 (1974):

Thus we see that the Code upon using the concept 'diligence of a good father of a family' had the purpose of leaving up to the courts to determine, in each particular case, which is the proper diligence, which generally should be that which 'an average or normal type of **diligent** person' would have exerted.

102 D.P.R. at 170 (Official Translations p. 212) (emphasis ours.) Upon this determination the court will decide which is the fault for which the debtor shall be held liable. It should be noted that an objective point of view was not chosen, but a subjective one, that of a diligent man, taking into consideration the circumstances of person, time, and place.

In *Ocasio,* a motor vehicle was delivered to defendant for some paint work, and was stolen at daybreak. Plaintiff, like in the instant case, alleged that defendant was negligent in permitting that the vehicle be stolen from the premises. The evidence was to the effect that the premises were completely surrounded by a wire fence, and that the gates were secured every day with a thick chain and a big lock. It was the first vehicle stolen from defendant's premises. Plaintiff contended that additional measures should have been taken, such as maintaining a watchman, or watchdogs. The District Court granted the complaint and the Superior Court affirmed. The Supreme Court of Puerto Rico reversed, finding that the presumption of negligence previously discussed was rebutted by the evidence presented. But the Supreme Court went on to state:

---

**1.** Article 1049 of the Civil Code, 31 L.P.R.A. Section 3013 in its pertinent part states that "[s]hould the person obligated be in default, or be bound to deliver the same thing to two or more different persons, he shall be liable therefor with regard to unforeseen events until the delivery is made." Article 1049 does not apply in the instant case.

We are concerned about the unusual rise which the theft of motor vehicles has attained in Puerto Rico. The daily Press maintains us informed of the constant police reports where it is dramatized in an alarming manner how stolen vehicles are mostly used to commit other offenses against the person and against the property, or for the enrichment of unscrupulous speculators who dismantle them for the sale of the parts or to reform and remodel them to resell them later on. This critical situation requires that the bailees of motor vehicles exercise in the future a greater zeal in the keeping of the motor vehicles entrusted to them taking the additional precautions which a good father of a family would adopt within the actual circumstances.

*Ocasio,* 102 D.P.R. at 170–171 (Official Translations at 213).

The Supreme Court realized that the concept of diligence is not static. It is dynamic and responds to changing circumstances of time, place, and persons involved. It must include the general state of affairs of the community: which measures must be taken by a diligent person under the circumstances to reasonably protect the property entrusted to them by others. That is precisely why the Legislators of the Civil Code chose judges to make such determination—which was the proper diligence under the circumstances and, therefore, which is the fault for which the debtor shall be held liable—instead of establishing an objective and a constant standard.

In the *Double AA Prop. Corp., supra,* defendant's agent left a vehicle leased from plaintiff parked on a sidewalk for one hour in front of a government building, while he was on work-related business. The building was located in the banking district, a place of great movement of people and automobiles. The vehicle was locked. It was stolen. The Supreme Court of Puerto Rico examined the question of a lessee's liability toward the lessor as a result of the theft of the leased thing. The concept of custody is common to both contracts: the lease contract of this case and the one between Inner Secrets and defendant. He must take care of the thing as a prudent and diligent man, and should adopt all reasonable precautions to prevent the theft of the thing he enjoys through a lease contract. 109 D.P.R., at 241.

It was held, under the particular facts of that case, that defendant's agent complied with all the diligence that could be required from a reasonable man. The Court found no precept of prudence requiring drivers to park their cars in private lots, and concluded that the lessee did not fail to exercise the care required of a good father of a family. The opinion noted that a different result could lie in different circumstances:

It is undoubtedly true that if the vehicle had been parked on the sidewalk with its doors open, or if the keys to the ignition had been left inside, the appellant /lessee/ would clearly be liable because one could not conclude that the cause of the theft was due to the thief's actions in the absence of the lessee's negligence.

*Double AA Prop. Corp.,* 109 D.P.R. at 241, n. 8 (9 Official Translations 312).

The problem is, thus, one of causation. This was squarely addressed in the normative case of *Estremera v. Inmobiliaria Rac., Inc.,* 109 D.P.R. 852 (1980). There the defendant was the owner and administrator of a building leased by some insurance claim adjusters. Maintenance, which included the lighting fixtures of the stairway, was one of defendant-lessor obligations. Lessee's messenger was stabbed and robbed by an assailant. He died the same day. The victim's family sued the lessor and its insurer for damages. The trial court found the defendant liable, holding that leaving the stairway without light bulbs for nine days facilitated robbery and murder. A causal nexus was found between the shadows in the stairway and the death of the messenger. Moreover, the trial court found it highly probable that the crime would not have taken place if the stairway had lighting fixtures. The Supreme Court of Puerto Rico reversed. It was held that there was no causal nexus between the delay incurred by the lessor in replacing the light bulbs on the stairway and the murder of the insurance company's messenger. "Such omission does not con-

stitute an affirmative conduct that considerably augmented the risk of injury to the plaintiff through the criminal act of a third person, in which case responsibility could be attributable to the defendant." *Estremera,* 109 D.P.R. at 857. (9 Official Translations 1255).

In that case defendant could not be found liable, given the system of 'relative liability' ("responsabilidad relativa") which the Puerto Rico Civil Code provides for in Article 1057. There was "... no obligation to foresee this type of injury within circumstances of person, time and place that of themselves do not constitute, as a normal risk of the contract, an attack upon the life of the lessees of the building." 109 D.P.R. at 857 (9 Official Translations 1256).

The analysis that the courts pursue balances the burden of taking precautions against the apparent risk that illegal acts by third parties be committed to persons or property. See Prosser, *The Law of Torts,* 173–176 (4th ed. 1971) cited with approval in *Estremera,* 109 D.P.R. at 858 n. 6. (9 Official Translations 1257). It is a difficult task, as difficult as determining when the casual relation is present and what are its limits. Theories are of limited value in this situation. For this reason Castán Tobeñas, cited with approval in the *Estremera* case, concludes:

> Said theories have only a relative value. In fact, as Ennenccerus himself has said, 'the difficulty in knowing up to what point one can take the casual relation can never be resolved by abstract rules in a manner that is completely satisfactory, more so, in case of doubt, it should be resolved by the judge based on his convictions and after pondering all circumstances.'

Castán–Tobeñas, *Derecho Civil Español,* 195 (10th ed. 1962) cited in *Estremera,* 109 D.P.R. at 859. (9 Official Translations 1258).

Within this framework, we shall examine the particular circumstances of time, place and person in the present case to determine the risk that illegal acts by third persons may be committed against the property entrusted to defendant, and then compare it to the relative burden of taking precautions against such acts. Once this analysis is performed, it can be determined how a diligent man would have acted under those circumstances and whether defendant can be held liable.

The structure where the stolen materials were kept is located at Camino Verde, in the outskirts of Aguas Buenas. Before the structure was made, the area was rural. At the time of the facts that give rise to this complaint, there were no other factories within one or two hundred yards. Some squatters had settled in the area. Although there is testimony by plant manager Liduvina Meléndez to the effect that a fence completely surrounds the premises, defendant's President and its majority stockholder since operations started fifteen years ago Melvyn Arbesfeld, testified during his deposition, plaintiff's Exhibit 9, pp. 18–19, that the fence just covers the front part of the premises. Plaintiff's counsel asked Mr. Arbesfeld:

> Q. So, the gate for people to come in is left open?
> A. Yes, because /it/ means nothing, because you can—anyone wants to get into the fence, can go beyond the premises and walk right in.
> Q. So, the fence does not completely go around?
> A. The fence covers—
> Q. The front part?
> A. —the front part of the area.

*Id.,* at pp. 37–38.

This theft is not the first one that had taken place at defendant's premises at Aguas Buenas. A few days before, on or around June 26, 1984, someone had entered the premises and stolen several portable radios, as well as some cash. Plaintiff's Exhibit 8–d, Puerto Rico Police Type I Violation Report 84–127. At the end of the previous year, on or around November 13, 1983, someone forced open a window of the building and stole tools and cash. Plaintiff's Exhibit 8–a, Puerto Rico Police Type I Violation Report 83–0141. The trial testimony of Mrs. Liduvina Meléndez, defendant's plant manager, was that other criminal acts had occurred prior to the ones

previously mentioned. It was after the 1983 robbery that grill work was installed in the premises. Obviously, they did not deter whoever broke into the factory. Although Mrs. Meléndez testified that there was grill work on all windows, there is evidence in the record, in Mr. Arbesfeld's deposition, that it was not installed on all of the windows. *Op. cit*, p. 33.

Only passive security measures were taken after the 1983 incident, and nothing special was done after the June 24, 1984 robbery, the one that took place just one week before the one related to this suit. A burglary alarm system was not installed, and no security personnel or guards were hired to protect the premises. Melvyn Arbesfeld's deposition, plaintiff's Exhibit 9, p. 32. It is with respect to this set of circumstances that this court must determine whether defendant acted as a diligent person to reasonably protect the property entrusted to it. Can we conclude in light of these circumstances that the cause of the theft was due to the burglar's actions in the absence of defendant's alleged negligence?

We hold that defendant did not act as a prudent and diligent man under the circumstances of this case. The facts of this case are easily distinguishable from the cases previously cited which have been decided by the Supreme Court of Puerto Rico. Here, there were prior incidents of burglaries in defendant's factory in Aguas Buenas. The premise was located in a secluded area. Even defendant's majority stockholder and President declared that anyone could get into the premises. The windows and grill work had been forced before. Someone had broken in just one week before. The court notes that the steps that might be reasonable at one point in time vary according to the circumstances. In this case defendant had a reasonable basis to believe that the passive measures that were taken were insufficient to reasonably protect the merchandise entrusted to it.

There is a direct casual relationship between the possible measures that could have been taken, such as a burglar's alarm or hiring security guards, and the prevention of crime. Certainly this is not the situation of *Estremera*, holding a landlord liable for the death of a messenger caused by an assailant for not changing the stairway's lightbulbs after being notified nine days before, where the Supreme Court found no causal nexus. Here there is a direct relationship between the location of the premises, the lack of security measures and the theft. The proposed security measures are not unduly burdensome compared with "... the apparent risk that illegal acts by third persons be committed to persons or property." We thus find defendant liable for the theft that took place between June 29 and July 2, 1984 in its premises in Aguas Buenas.

As an affirmative defense, defendant alleges that even if found liable, it was released of any liability, particularly under the facts of this case, by certain letters sent on or around January 1982, January 1983 and January 1984. Defendant's Exhibits V, VI, VII. This contention is without merit. Although there is doubt whether the letters were in fact sent (Mr. Jack Thekkekara's Deposition, plaintiff's Exhibit 10, pp. 31–32), we need not discuss this. Even if they were sent and received, as defendant alleges, they do not constitute a clear, conclusive and unequivocal renunciation of a right, as required by the laws of the Commonwealth of Puerto Rico. Article 4 Civil Code, 31 L.P.R.A. Section 4, *Cabrera v. Doval*, 76 D.P.R. 728 (1954) followed in the normative case of *Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759 (1973). *C.F. Waco Export Co. v. Expreso Meteoro, Inc.*, 108 D.P.R. 309, 314–316 (1979) (a carrier is not empowered to execute a commercial transportation contract where it is released from all liability it could incur as overland carrier under the provisions of the Commerce Code of Puerto Rico).

For the reasons stated, judgment in the amount of $9,720.22 shall be entered in favor of plaintiff.

SO ORDERED.