Feliciano Acevedo, Juez Ponente
*1233 TEXTO COMPLETO DE LA SENTENCIA
I
Las Sucesiones de Francisco Vega Marrero, Mariana Rodríguez .Santana y otros; apelan de una sentencia parcial dictada el día 7 de junio de 1996, por el Tribunal de Primera Instancia, Sala Superior de Ponce (Honorable Juez Leida González Degró). Mediante dicha sentencia, se declaró sin lugar una demanda presentada contra la Autoridad de Energía Eléctrica y sus aseguradoras; y con lugar la demanda contra Edwin de Jesús Alvarado, Marcos A. Velázquez Martínez y José M. Colón Acevedo. Además, el Tribunal desestimó la demanda de tercero presentada contra el Estado Libre Asociado de Puerto Rico. Ambos casos fueron acumulados mediante Resolución dictada el 17 de febrero de 1993. Las partes acordaron la separación de los aspectos de responsabilidad y daños, por lo que la vista celebrada fue a los efectos de determinar exclusivamente responsabilidad.
Por los fundamentos expuestos a continuación, confirmamos la sentencia parcial dictada por el foro apelado.
II
El día 23 de junio de 1991, los esposos Francisco Vega y Mariana Rodríguez Santana y su hijo Martín Vega Rodríguez y un amigo de éste llamado José A. Velázquez Blanco, se encontraban en el Río Maraguez de Ponce, donde fallecieron electrocutados al penetrar en un área del río donde había un cable energizado. Dicho cable cayó al agua cuando el poste que lo sostenía fue cortado.
Posteriormente, familiares de los fenecidos entablaron demandas por daños y perjuicios contra la Autoridad de Energía Eléctrica, figurando como terceros demandados el Estado Libre Asociado de Puerto Rico, Edwin de Jesús Alvarado, Marcos A. Velázquez Martínez y José M. Colón Acevedo. Estos últimos tres demandados, fueron los que alegadamente cortaron el poste que sostenía el tendido eléctrico.
El Tribunal de Primera Instancia estimó probados, entre otros, los siguientes hechos:

"El domingo 23 de junio de 1991, los fenecidos se encontraban en el Río Maraguez de Ponce, localizado en la carretera número 139, donde fueron a disfrutar de un rato de esparcimiento. Luego de un rato, los esposos Vega y Rodríguez extrañaron la presencia de los niños y comenzaron a buscarlos por los alrededores del río. Mientras buscaban se toparon con el señor Héctor Manuel Ruiz (uno de los demandantes) y le preguntaron si había visto a los dos niños, contestando éste que no. Minutos más tarde, el señor Ruiz oyó unos gritos y corrió río arriba, hacia donde habían caminado los esposos en busca de los niños. En eso vio a la señora Rodríguez que caminaba por el río, en un área donde el agua le llegaba a nivel de las rodillas, y de momento la vio caer tendida sobre el agua. El señor Ruiz se acerco a ella para ayudarla, pero sintió una corriente eléctrica fuerte hasta el nivel de sus rodillas y saltó inmediatamente sobre una piedra. Luego trató de tomarla por el pelo, pero nuevamente sintió corriente y la soltó. Mientras tanto, el señor Vega estaba también en el agua y le pedía ayuda al Sr. Héctor Manuel Ruiz, pero, éste también cayo sobre el lecho del río. En el momento que el señor Ruiz se dirigía a ayudarlo se percató de que dos niños estaban flotanto sobre el agua como si estuviesen muertos. Ante esta situación, se asustó y fue corriendo hacia su familia y les ordenó salir del río. Luego de haber solicitado ayuda, llegaron al lugar miembros de la policía, agentes de operaciones tácticas, una unidad de rescate y personal de la Autoridad de Energía Eléctrica.

Luego de que personal de la Autoridad cortaran la corriente del cable energizado que estaba dentro del agua, los policías sacaron los cadáveres.

A orillas de la carretera 139, cerca del área del río, donde fallecieron las cuatro personas, había un poste del alumbrado que había sido cortado. El poste fue tumbado por los demandados y terceros demandados, Edwin de Jesus Alvarado, Marcos A. Velázquez y José M. Colón Acevedo, de forma intencional y en concierto y común acuerdo. A estos tres demandados se les anotó la rebeldía y no . . parecieron a la vista del caso.

La responsabilidad que se imputa en estos casos a la Autoridad de Energía Eléctrica consiste en 
*1234
que alegadamente desde el 21 de junio de 1992, un empleado de la Compañía Las Piedras Construction, que realizaba un trabajo y mantenía oficinas cerca del área de los hechos, había notificado a la Autoridad que existía un problema de bajo voltaje que estaba afectando el uso de sus computadoras y que había visto un poste del alumbrado tirado a orillas de la carretera 139. Dicho empleado al llamar a la Autoridad, no pudo dar información sobre el kilómetro donde ubicaba su oficina, ni donde había visto el poste, pues, desconocía esos datos. Por ello, indicó al empleado de la Autoridad que lo atendió, al éste preguntarle sobre el lugar, que era en el sector Los Fondos del Barrio Maraguez y que cuando fuera se detuviera en las oficinas de la Autoridad de Carreteras para que allí le explicaran donde quedaban las oficinas de Las Piedras Construction.

Antes de la llamada realizada por el empleado de Las Piedras, se había reportado a la Autoridad otro problema de bajo voltaje en el área de la represa donde trabajaba el Cuerpo de Ingenieros. Una brigada de la Autoridad se dirigió a la represa. Una vez allí realizaron una inspección por los montes donde habían postes, sin que lograran conseguir cuál era el problema. De ahí se dirigieron a atender la llamada sobre el poste tendido sobre la carretera 139. Al llegar allí movieron los postes más hacia la orilla, éstos no estaban energizados. Después de esto, la brigada regresó al área de la represa, abandonándola luego por no haber dado con la falla. Ese mismo día, el 21 de junio, el empleado de Las Piedras volvió a llamar a la Autoridad y se le informó que se había enviado una patrulla al área.

Durante el día siguiente, 22 de junio, la Autoridad recibió dos llamadas del Cuerpo de Ingenieros notificando el problema de bajo voltaje. Se enviaron brigadas al lugar, se tomaron medidas de voltaje en varios sectores, se inspeccionaron las líneas, se abrieron los fusibles para determinar si había alambres en el suelo, descartándose dicha posibilidad. Se examinaron las líneas en la sub-sección del Barrio Maraguez y no se encontraron problemas. A las 3:30 de la tarde se retiraron del lugar sin encontrar la causa del problema. Desde esa hora del día 22 de junio y hasta la tarde del 23 de junio no se recibieron más quejas del sector, hasta la llamada que reportó el fatal accidente."

El Tribunal de Primera Instancia, luego de apreciar la prueba desfilada, determinó que la Autoridad de Energía Eléctrica había sido diligente, puesto que las brigadas examinaron las líneas y los postes hasta el área de la represa, desde donde comenzaban las líneas en la subestación de la entrada del Barrio Maraguez hasta la represa, que quedaba por el kilómetro 6 de la carretera 139, sin éxito alguno. El cable energizado se encontraba en el kilómetro 11. Concluyó que, de acuerdo a los hechos y condiciones prevalecientes, la actuación de la Autoridad fue una razonable.
Estableció el Tribunal apelado que después de la llamada del empleado de Las Piedras, no se notificó ningún problema de voltaje o de poste caído en ningún sector que no fuese el área de la represa. El propio empleado de Las Piedras admitió que, a pesar de que estuvo en la oficina la tarde del día 21, el día 22 y el día 23 en la mañana y notó la presencia del poste caído y el bajo voltaje, no volvió a llamar a la Autoridad para comunicarlo. Tampoco se recibieron quejas de otros vecinos del sector.
Por otro lado, el Tribunal determinó que las bajas en voltaje pueden deberse a varios factores, entre éstos, el uso que den los abonados, contacto de cables con ramas de árboles, incremento de carga, cables flojos y cables caídos. Además, el Tribunal dio por establecido que es frecuente que existan problemas de voltaje en determinado momento y luego desaparezca el problema, especialmente cuando se trata de problemas con ganchos de árboles. Infirió el Tribunal, que el problema de voltaje reportado en el área de la represa y aun el reportado y no anotado en el área de Las Piedras, no necesariamente implicaba que se hubiese caído un poste y/o cable energizado.
III
Los apelantes sostienen que el Tribunal de Primera Instancia cometió los siguientes errores:
1. "Erró el Honorable Tribunal de Primera Instancia al determinar que no hubo acto ni omisión negligente de la Autoridad de Energía Eléctrica, a pesar de concluir y aceptar, que si los empleados de la demandada hubieran llegado hasta Las Piedras Construction, probablemente hubiesen visto el poste y hubiesen resuelto el problema del cable energizado."
2. "jErró el Honorable Tribunal de Primera Instancia al determinar que la actuación de la *1235 Autoridad de Energía Eléctrica fue una razonable, olvidando los principios de previsibilidad, de causalidad concurrente y proporcionalidad entre el grado de negligencia y el riesgo envuelto en la situación de hechos de este caso, a pesar de haber concluido que los empleados de Autoridad pudieron haber llegado a Las Piedras Construction".
3. "Erró el Honorable Tribunal de Primera Instancia al determinar, que aun cuando los empleados de la Autoridad hubiesen resuelto el problema de los cables energizados, no se suplanta ni se sustituye o interrumpe el nexo causal, ni fue una causa interventora lo suficientemente relevante como para convertirse en la causa legal del resultado dañoso."
4. "Incurrió en error manifiesto el Honorable Tribunal de Primera Instancia al aquilatar la prueba en forma arbitraria, lo que no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada, por lo que incorrectamente concluyó que la causa directa del accidente había sido la acción culposa de los tres codemandados que cortaron el cable."
Los primeros tres señalamientos de error están dirigidos a.la determinación .de-responsabilidad, exclusivamente. Por entender que están íntimamente relacionados, los discutiremos conjuntamente.
IV
El Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. 5141, establece que, el que por acción u omisión cause daño a otro, interviniendo culpa o negligencia, está obligado a compensar los daños causados.
Para que una reclamación fundada en la responsabilidad extracontractual por negligencia pueda prosperar, ha de probarse (1) la existencia de un daño o perjuicio; (2) la ocurrencia de un acto u omisión negligente y (3) que la última haya sido la causa adecuada de la anterior. Carlos Irizarry Yunqué, Responsabilidad Civil Extracontractual, Facultad de Derecho de la Universidad Interamericana, 2da. Ed., (1996) pág. 170.
A los fines de determinar si se ha incurrido o no en responsabilidad civil resultante de una omisión, hay que considerar dos factores: la existencia o inexistencia de un deber jurídico de actuar por el alegado causante del daño cuyo incumplimiento constituye un acto antijurídico y si, de haberse realizado el acto omitido, se hubiera evitado el daño. Miranda v. E.L.A., _ D.P.R. _ (1994), 94 J.T.S. 152, pág. 524. Es imperativo determinar, si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por contrario, queda fuera de todo cálculo. Miranda, supra, págs. 523-524.
En Elba A.B. v. U.P.R., 125 D.P.R. 294, 309 (1990), el Tribunal Supremo expresó que los factores de previsibilidad y el riesgo envuelto en el caso específico, son elementos esenciales de la responsabilidad por culpa o negligencia. Sobre este particular expresó lo siguiente:

"El deber de cuidado incluye tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo previsto o las consecuencias exactas arrastradas■ debieron ser previstos. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase."

Como correctamente señaló el Tribunal apelado, en cuanto al deber de cuidado exigido a las compañías dedicadas a proveer servicio de energía eléctrica, el Tribunal Supremo ha indicado que éstas no tienen la responsabilidad de un asegurador y, por tanto, no responden en cualquier caso en que se cause un perjuicio, a menos que el daño-haya sido producido por su culpa o negligencia al omitir desplegar un grado de cuidado en proporción al riesgo o peligro envuelto. Vda. de Dávila v. A.F.F., 90 D.P.R. 321, 325 (1964).
En Ramos v. A.F.F., 66 D.P.R. 603, (1962), el Tribunal Supremo señaló que:

"Las personas o empresas que se dedican a generar y distribuir electricidad deben ejercitar el más alto grado de cuidado para evitar causar daño, atendido el carácter inherentemente peligroso de este elemento... Este grado de cuidado no se extiende únicamente a la instalación, mantenimiento y 
*1236
operación de la planta productora de la electricidad y líneas que la conducen; incluye, además, la obligación de realizar una inspección adecuada para descubrir defectos y situaciones de peligro o riesgo para el público."

Con relación a la obligación de inspeccionar, precisa mencionar que el Tribunal Supremo expuso en Ramos v. A.F.F., supra, pág. 609, que:

"...la misma no supone una vigilancia continua, o que le permita en todo momento estar informada sobre la condición de los alambres..., y que, en ausencia de circunstancias especiales, la frecuencia de las inspecciones debe determinarse tomando en consideración la situación de las líneas, la posibilidad de que el público venga en contacto con las mismas, la clase de instalación y otros factores... El factor decisivo es la probabilidad de riesgos. En el presente caso se trata de líneas del servicio de electrificación rural, emplazadas en el corazón mismo de la montaña, lejos de vías públicas, en un lugar despoblado y remoto, y colocadas en forma tal que la probabilidad de riesgo para el público es mínima...".

De otra parte, en Burgos Quiñones v. A.F.F., 90 D.P.R. 613, 619 (1964), el Tribunal Supremo de Puerto Rico expresó que no se le imputará responsabilidad al suplidor de energía eléctrica sin que quede establecida la relación causal entre el daño ocurrido y la instrumentalidad propiedad de y bajo el control de la demandada. De este modo, se estableció así que corresponde al demandante demostrar, por la preponderancia de la prueba, no sólo esta relación causal, sino que el daño haya sido producido por la culpa o negligencia de la demandada al no desplegar un grado de cuidado proporcional al riesgo envuelto.
Precisa señalar que, en el caso ante nuestra consideración, la Autoridad de Energía Eléctrica atendió las llamadas recibidas, sus empleados realizaron pruebas de voltaje e inspeccionaron los montes donde habían postes de tendido eléctrico. Sin duda alguna, desplegaron un nivel de diligencia razonable.
Los apelantes argumentan que fue un error el determinar que no hubo causa interventora lo suficientemente relevante como para convertirse en la causa legal del daño ocasionado. No tienen razón. Veamos.
La causa interventora es una de origen independiente que surge u opera con posterioridad a la conducta negligente del actor, rompiendo todo nexo de causalidad entre dicha conducta del autor y el resultado dañoso, al participar la nueva causa en forma activa y determinante en la producción del daño. La aparición de la causa interventora exime de responsabilidad al actor. Carlos J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, Facultad de Derecho de la Universidad Interamericana, 2da. Ed., 1996, pág. 334. Podemos añadir que causa interventora es la que participa activamente en producir el resultado después que ha ocurrido la negligencia u omisión del actor. Ginés v. AFF, 86 D.P.R. 518 (1962). Puede decirse que es la que hace desaparecer un mal anterior como causa legal del accidente, rompiendo la secuencia entre el mal anterior y los daños. La causa interventora debe ser independiente, suficiente y adecuada para causar los daños resultantes.
En el presente caso, la Autoridad de Energía Eléctrica no fue la causante de la caída del poste, ni intervino de manera alguna. Razonablemente no puede decirse que haya participado en forma activa y determinante en la producción del daño.
Un daño puede ser el resultado de la culpa o negligencia de dos o más personas. Como en este caso, también puede deberse a la conducta culposa de una persona que concurre con la conducta inocente de otra, o con un factor de fuerza mayor. Sin duda, en cualquiera de estos casos responde del daño solamente quien culposa o negligentemente lo causó. Carlos Irizarry Yunqué, Responsabilidad Civil Extracontractual, supra, pág. 351.
Los apelantes sostienen que el foro apelado olvidó aplicar los principios de previsibilidad y nexo causal. Nuevamente, están equivocados.
Un elemento esencial de la responsabilidad por culpa o negligencia es el factor de previsibilidad y *1237 el riesgo envuelto en el caso específico. El grado de previsibilidad requerido, en cada caso en particular, depende del estándar de conducta aplicable. El deber de cuidado incluye, tanto la obligación de anticipar como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. Elba v. U.P.R., supra, pág. 309. Sin embargo, la regla de anticipar el riesgo no se limita a que el riesgo preciso o las circunstancias exactas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase. Ginés v. Autoridad de Acueductos, supra, pág. 524.
Por otro lado, para determinar lo que constituye un resultado razonablemente previsible, debemos acudir a la figura del hombre prudente y razonable, según definida ésta en nuestra jurisprudencia. Tomando como base esta figura, el Tribunal Supremo ha resuelto que "...el deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad... sino a aquél que llevaría a una persona prudente a anticiparlo." Estremera v. Inmobiliaria Rac, Inc., 109 D.P.R. 852, 859 (1980).

"La dificultad de precisar cuándo se da la relación de causalidad y cuáles son sus límites; cuándo deba estimarse que el hecho productor del daño es causa jurídica que, según su naturaleza general, aparezca como adecuada para engendrar dicho daño, lleva a Castán Tobeñas a concluir: "Tales teorías tienen sólo un valor relativo. En realidad como dice el propio Enneccerus, la difícil cuestión de hasta dónde llega el nexo causal no podría resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias".

Estremera v. Inmobiliaria Rac, Inc., 109 D.P.R. 852, 859-860, citando a Castán Tobeñas, Derecho Civil Español, Común y Foral, 10ma. Ed., 1978, T. 3, pág. 195.
La cadena de eventos que culminó con la muerte de cuatro personas, fue desatada por los hombres que intencional y maliciosiamente cortaron el poste del tendido eléctrico. Reiteramos que la Autoridad de Energía Eléctrica actuó de forma diligente y razonable.
Concluimos que los primeros tres errores señalados no fueron cometidos.
Y
En último lugar, los apelantes sostienen, en síntesis, que erró el Tribunal de Primera Instancia en su apreciación de la prueba presentada. No les asiste la razón. Veamos.
Es norma reiterada y fundamental de nuestro ordenamiento jurídico que un tribunal apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de la credibilidad que hizo el juzgador de los hechos, salvo que haya mediado prejuicio o error manifiesto de su parte. Quiñones López v. Manzano Pozas, 141 D.P.R. _ (1996), 96 D.P.R. 95, 1305. Dicha norma tiene como base la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2, la cual específicamente dispone que las determinaciones de hechos realizadas por el Tribunal de Primera Instancia no deberán ser alteradas a menos que se demuestre que las mismas son claramente erróneas o producto de pasión, prejuicio o parcialidad. Maryland Casualty Co. v. Quick Cont. Co., 90 D.P.R. 329, 335-339 (1964).
Es menester recordar, que la mera existencia de prueba conflictiva, no constituye error manifiesto. Por el contrario, reiteradamente el Tribunal Supremo ha resuelto que cuando existe conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimir ese conflicto. Sanabria v. Sucn. González, 82 D.P.R. 885, 996-997 (1961).
Reconocemos que aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987).
En sus conclusiones de derecho, el Tribunal de Primera Instancia expresó lo siguiente:

"La prueba desfilada ante nos, satisfizo nuestra conciencia judicial en cuanto a que la causa directa de los daños sufridos por los demandantes de epígrafe fue la acción culposa de los tres 
*1238
co-demandados que cortaron el poste en cuestión."

(Sentencia Parda], pág. 12).
Coincidimos con el foro apelado. De acuerdo a los hechos y condiciones prevalecientes, la actuación de la Autoridad fue una razonable y diligente. Ante tales circunstancias, no procedía imponerle responsabilidad por lo ocurrido.
Con relación a la demanda contra tercero, presentada por la Autoridad contra el Estado Libre Asociado de Puerto Rico, el Tribunal apelado determinó que no se presentó prueba alguna que estableciera que la Policía tenía conocimiento de la caída del poste ni se estableció acción u omisión negligente alguna por parte de la Policía. El E.L.A. solicitó la desestimación de dicha demanda y el Tribunal de Primera Instancia resolvió declarar con lugar la petición.
A través de todo el expediente, no encontramos que el Tribunal de Primera Instancia haya cometido manifiesto error al aquilatar la prueba desfilada, mucho menos que haya actuado con pasión, prejuicio o parcialidad. Por tal motivo, no intervendremos con la apreciación de la prueba realizada por dicho foro.
VI
Por los fundamentos anteriormente señalados, confirmamos la decisión del foro apelado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General