ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| NILDA RAMOS COLÓN, *ET AL.* <br><br> Apelantes <br><br> v. <br><br> TRANSPORTE LEÓN LLC., *ET ALS.* <br><br> Apelados | KLAN202301010 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br> Civil núm.: SJ2020CV06038 consolidado con SJ2020CV06113 <br><br> Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta la juez Barresi Ramos, la jueza Santiago Calderón y el juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de marzo de 2024.

Comparece la demandante contra coparte y contra tercero, Sra. Cynthia Y. Esterás-Nieves y otros, mediante un recurso de *Apelación*. Solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 31 de octubre de 2023 y notificada a las partes el 1 de noviembre de 2023. En la aludida sentencia parcial, el TPI acogió la *Solicitud de Sentencia Sumaria* presentada el 31 de julio de 2023 por la parte codemandada, Oriental Sand & Gravel, Inc. (Oriental), y desestimó el pleito, con perjuicio, respecto a dicha parte por entender que Oriental no era cocausante de los daños sufridos por la parte demandante.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia Parcial.*

---

[1] Mediante Orden Administrativa OATA-2023-212 se designó al Juez José I. Campos Pérez, en sustitución de la Hon. Gloria L. Lebrón Nieves.

Número Identificador

SEN2024_____

**I.**

Los hechos del presente recurso tienen su génesis en dos *Demandas* por daños y perjuicios, SJ2020CV06038 y SJ2020CV06113, presentadas contra Transporte León, LLC. y otros, por un accidente de múltiples autos ocurrido el 6 de noviembre de 2020.[2] En dichas demandas, se le solicitaba al Tribunal que declarará con lugar la reclamación y les impusiera a las partes demandadas el pago en daños y perjuicios sufridos por las partes demandantes.[3] Según alegaron, en síntesis, el empleado de Transporte León, LLC., señor Rafael E. Cotto Martínez (señor Cotto Martínez), quien condujo un camión cargado, ocasionó varias colisiones, causándole daños a los demandantes.[4] Conforme a lo anterior, el Tribunal mediante una *Orden* unió ambos pleitos en uno.[5]

Luego de varios incidentes procesales, el 21 de diciembre de 2020, MAPFRE Praico Insurance Company, como aseguradora de Transporte León, LLC., presentó una *Contestación a demanda enmendada, reconvención y demanda contra terceros de interpleader bajo la Regla 19 de las de Procedimiento Civil*.[6] En síntesis, solicitó el procedimiento de *Interpleader* bajo la Regla 19 de Procedimiento Civil, 32 LPRA Ap. V., R.19, pues estaba siendo objeto de múltiples reclamaciones por el mismo accidente y las mismas excedían el monto de la cubierta.[7]

El 28 de septiembre de 2021, los demandantes contra coparte y demandantes contra terceros, Sra. Cynthia Y. Esterás-Nieves, Sr.

---

[2] La parte apelante omitió presentar ante el Tribunal de Apelaciones las demandas SJ2020CV06038 y SJ2020CV06113. Véase SJ2020CV06038, entrada número 1 del Sistema Uniformado de Manejo y Administración del Caso (SUMAC). Véase, además, SJ2020CV06113 entrada número 1 del Sistema Uniformado de Manejo y Administración del Caso (SUMAC).

[3] Véase SJ2020CV06038, entrada número 1 SUMAC; SJ2020CV06113 entrada número 1 SUMAC.

[4] Véase SJ2020CV06038, entrada número 1 SUMAC; SJ2020CV06113 entrada número 1 SUMAC.

[5] Véase SJ2020CV06038, entrada número 23 SUMAC.

[6] Apéndice de la parte demandante-apelante, en el Anejo 2 págs.9-22.

[7] Apéndice de la parte demandante-apelante, en el Anejo 2 págs.9-22.

Manuel Ruíz, Sr. Josué Esterás-Nieves, Sra. Alicia Nieves y Sr. José Esterás presentaron una *Demanda enmendada contra coparte*.[8] Alegaron, en síntesis, que Oriental respondía en daños, pues este cargó con arena el furgón del camión de Transporte León, LLC. que iba a ser transportado hasta las facilidades de Asphalt Solutions y/o Super Asphalt en Toa Alta sin antes cerciorarse si el conductor estaba físicamente apto para fungir como conductor del camión.[9]

Así las cosas, el 31 de julio de 2023, la parte codemandada Oriental presentó su *Contestación a demanda enmendada contra coparte*.[10] En dicho escrito negó algunos hechos expuestos por la Sra. Cynthia Y. Esterás-Nieves, el Sr. Manuel Ruíz, el Sr. Josué Esterás-Nieves, la Sra. Alicia Nieves y el Sr. José Esterás, de igual forma, levantó como defensas afirmativas, entre otras, la inexistencia de un nexo causal entre los daños y la actuación alegada.[11]

Ese mismo día, luego de presentar su *Contestación a demanda enmendada contra coparte*, Oriental presentó una *Solicitud de sentencia sumaria*.[12] En síntesis, en dicha solicitud, arguyó que procedía la desestimación de la acción respecto a Oriental, pues no existía una relación causal entre la alegada actuación y el daño sufrido por los demandantes.[13] Esto es así pues, según alegó Oriental, ellos únicamente se limitaron a llenar el furgón del camión con arena para ser transportada a Asphalt Solutions y/o Super Asphalt en Toa Alta.[14]

De igual forma, arguyeron que tampoco actuaron de manera negligente al no requerirle al señor Cotto Martínez que presentara la documentación requerida para cerciorarse si estaba en condiciones

---

[8] Apéndice de la parte demandante-apelante, en el Anejo 4 págs.35-57.
[9] Apéndice de la parte demandante-apelante, en el Anejo 4 págs. 35-57.
[10] Apéndice de la parte demandante-apelante, en el Anejo 5 págs. 58-62.
[11] Apéndice de la parte demandante-apelante, en el Anejo 5 págs. 58-62.
[12] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.
[13] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.
[14] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.

físicamente aptas para conducir el camión, pues no existía un deber jurídico que le impusiera dicha responsabilidad a Oriental.[15] Esto es así, pues Oriental no tenía ningún tipo de relación contractual con Transporte León, LLC. que le obligara a cerciorarse que los camioneros de dicha compañía estuviesen en condiciones físicas para ejercer sus funciones.[16] De la misma manera, Oriental arguyó que la única relación contractual existente era la que esta tenía con Asphalt Solutions y/o Super Asphalt por lo que no existía ningún deber jurídico.[17]

Así las cosas, Oriental enlistó en su *Solicitud de sentencia sumaria* los siguientes hechos materiales y pertinentes como incontrovertidos:

4.1 La parte codemandada Oriental Sand & Gravel, Inc. es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, que opera una cantera en el municipio de Yabucoa. Alegación hecha en ambas, la Demanda como la Demanda de Coparte que fue aceptada por la compareciente.

4.2 Oriental Sand & Gravel, Inc. vendió a Asphalt Solution una carga consistente en arena procesada. Este hecho ha sido alegado por la demandante y demandantes de co-parte y aceptado tanto por el codemandado Asphalt Solution como por la compareciente. Véase, además, Conduce Oriental Sand & Gravel Inc. No. 219460 (#219585) 11/6/2020, Asphalt Toa Alta, el cual es un documento estipulado por las partes en el Informe de Conferencia con Antelación al Juicio y se marca como Exhibit A.

4.3 Asphalt Solution contrató a Transporte León para el transporte de la carga. Este hecho ha sido alegado por la demandante y demandante de co-parte y aceptado por los codemandados Asphalt Solution, Transporte León y la compareciente Oriental Sand & Gravel, Inc.

4.4 Transporte León contrató con [el] camionero Rafael Cotto Martínez para realizar el transporte. Este hecho ha sido admitido por ambos codemandados Transporte León y Rafael Cotto Martínez.

4.5 Como parte del procedimiento para la entrega del material, los camiones hacen fila y se estacionan en el área designada. Sus choferes no se suponen se bajen de los camiones. El número de tablilla del camión que habrá de recoger la carga es informado por el cliente a Oriental previamente, por lo que antes de hacer entrega

---

[15] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.
[16] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.
[17] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.

del material se verifica contra el conduce u orden de compra del cliente para verificar la carga a ser entregada. Véase transcripción de la deposición tomada al Sr. Ramón Levy, dueño de la codemandada Oriental Sand & Gravel, Inc., a las páginas 21 a la 23, la cual se marca como Exhibit B.

4.6 El procedimiento al cargar el camión con el material conlleva que el mismo sea pesado antes de recibir la carta y luego de recibir la carga. Véase transcripción de la deposición tomada al Sr. Ramón Levy, dueño de la codemandada Oriental Sand & Gravel, Inc., a la página 27, la cual se marca como Exhibit B.

4.7 El Sr. Ramón Levy, dueño de Oriental Sands & Gravel, Inc.[,] no conocía previamente al Sr. Raf[a]el E. Cotto Martínez. Véase transcripción de la deposición tomada al Sr. Ramón Levy, dueño de la codemandada Oriental Sand & Gravel, Inc., a las páginas 33 y 34, la cual se marca como Exhibit B.

4.8 La Policía de Puerto Rico investigó el accidente ocurrido el 6 de noviembre de 2020, a las 10:05 am en la Carretera 52, km. 2.5, San Juan, bajo la querella 2020-1-299-507. Hecho estipulado por las partes en el Informe de Conferencia con Antelación al Juicio. Además, véase el [Informe] de la Policía de Puerto Rico bajo la querella 2020-1-299-507 marcado como Exhibit C.

4.9 La Policía de Puerto Rico concluyó que el accidente se debió a que Rafael Cotto Martínez conducía a exceso de velocidad un camión Mack, modelo R0600 del año 1999, tablilla RP-6692 y al percatarse de una congestión vehicular, quiso rebasar por el paseo, ocasionando el accidente. Hecho estipulado por las partes en el Informe de Conferencia con Antelación al Juicio. Además, véase el [Informe] de la Policía de Puerto Rico bajo la querella 2020-1-299-507 marcado como Exhibit C.

4.10 La Policía de Puerto Rico examinó y pesó el camión y furgón, concluyendo que el peso era adecuado para el transporte. Véase el [Informe] de la Policía de Puerto Rico bajo la querella 2020-1-299-507 marcado como Exhibit C.

4.11 Al momento de la ocurrencia del accidente el chofer Sr. Rafael Cotto Martínez contaba con licencia vigente número 7007371 expedida por el Departamento de Transportación y Obras [Públicas] de Puerto Rico. Véase copia de la licencia del Sr. Rafael Cotto Martínez, la cual es un documento estipulado por las partes en el Informe de Conferencia con Antelación al Juicio y se aneja como Exhibit D.

4.12 Al momento de la ocurrencia del accidente el chofer Sr. Rafael Cotto Martínez contaba con licencia del Departamento de Transportación Federal conocida como Transportation Worker Identification Credential ("TWIC") con fecha de expiración del 12 de abril de 2023. Véase copia del TWIC, la cual es un documento

estipulado por las partes en el Informe de Conferencia con Antelación al Juicio y se aneja como Exhibit E.[18]

Luego de varios incidentes procesales, el 16 de agosto de 2023, la Sra. Cynthia Y. Esterás-Nieves, el Sr. Manuel Ruíz, el Sr. Josué Esterás-Nieves, la Sra. Alicia Nieves y el Sr. José Esterás presentaron una *Oposición a moción de sentencia sumaria presentada por Sand & Gravel.* En síntesis, en su escrito alegaron que no procedían los argumentos levantados por Oriental, pues estos incumplieron con el deber de cerciorarse si el señor Cotto Martínez, estaba en condiciones físicas óptimas para manejar el camión según las Secciones 391, 391.11 del Reglamento para el Transporte Comercial de la Comisión del Servicio Público, Reglamento Núm. 7470 del 4 de marzo de 2008.[19]

El 31 de octubre de 2023 el Tribunal de Primera Instancia emitió una *Sentencia parcial.*[20] Dicha sentencia declara Ha Lugar la *Solicitud de sentencia sumaria* presentada por Oriental, pues el TPI concluyó que Oriental no fue cocausante del daño sufrido por los demandantes y que la participación de dicha compañía se limitó a vender y cargar la arena en el furgón, desestimando la acción respecto a Oriental con perjuicio.[21]

Inconforme, la parte demandante acudió ante nos oportunamente mediante el presente recurso de *Apelación.* En su escrito, señala el siguiente error:

> Erró el TPI al concluir que no existía una obligación en ley o reglamento que le impusiera a [Oriental] Sand & Gravel la obligación de asegurarse que Cotto Martínez estuviera físicamente capacitado de acuerdo con el RTC para recibir la carga y manejar el Camión Mack que habría de transportarla en el Furgón.

La parte apelada presentó el 8 de diciembre de 2023 su *Oposición a apelación.* Contando con la comparecencia de ambas partes, procedemos a resolver.

---

[18] Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 63-136.
[19] Apéndice de la parte demandante-apelante, en el Anejo 8 págs. 305-477.
[20] Apéndice de la parte demandante-apelante, en el Anejo 10 págs. 489-496.
[21] Apéndice de la parte demandante-apelante, en el Anejo 10 págs. 489-496.

**II.**

*La Sentencia Sumaria*

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R.36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2. Por su lado, conforme la Regla 36.3 de Procedimiento Civil, *supra,* en su contestación, la parte promovida "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica,

como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede". 32 LPRA Ap. V, R. 36.3 (c). Asimismo, la Regla 36.3 de Procedimiento Civil, *supra*, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. 32 LPRA Ap. V, R. 36.3; Véase, *Pérez Vargas v. Office Depot, supra*, pág. 698. Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas, supra*, pág. 111. En caso de que el promovido sea quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la *Moción de sentencia*

*sumaria* en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos estatuidos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.*

Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos. *Id.,* pág. 119.

Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo, supra*, pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y

esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

### *La Responsabilidad Civil Extracontractual*

El hoy derogado, pero vigente a los hechos, Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141,[22] disponía que todo aquél que por acción u omisión cause un daño a otro vendrá obligado a repararlo, si ha mediado culpa o negligencia. Para poder reclamar daños y perjuicios bajo este artículo el Tribunal Supremo ha expresado que el demandante debe establecer la existencia de estos tres requisitos: (1) la existencia de un daño real; (2) el nexo causal entre daño sufrido y la acción u omisión del demandado; y (3) que el acto u omisión es culposo o negligente. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Respecto al concepto de culpa y negligencia, nuestro más alto foro ha expresado que consiste en la:

> falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias.[23]

Por otro lado, la omisión genera responsabilidad civil extracontractual siempre y cuando dicha omisión constituya una conducta antijurídica imputable. *Hernández Vélez v. Televicentro*, 168 DPR 803, 812 (2006); *Arroyo López v. E.L.A.*, 126 DPR 682, 686 (1990). Para determinar si se incurrió o no en responsabilidad civil por omisión, el Tribunal Supremo ha expresado que deben considerarse los siguientes factores:

> (i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si

---

[22] Véase, Artículo 1815 del Código Civil de 2020, 31 LPRA sec. 11720, el cual dispone, en parte, que "[l]a responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. [...]".

[23] *López v. Porrata Doria*, 165 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997).

de haberse realizado el acto omitido se hubiera evitado el daño.[24]

Nuestro ordenamiento jurídico ha expresado que el deber de indemnizar presupone la existencia de un nexo causal. *Estremera v. Inmobiliaria Rac, Inc.*, 109 DPR 852, 856 (1980). El Tribunal Supremo ha establecido que en Puerto Rico se rige por la doctrina de la causalidad adecuada. *Pérez et al. v. Lares Medical et al.*, supra en la pág. 977; *López v. Porrata Doria*; en la pág. 151. La doctrina de causalidad adecuada presupone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Pérez et al. v. Lares Medical et al.*, supra, en la pág. 977; *López v. Porrata Doria*; en la pág. 151-152. En otras palabras, la cuestión se limita a determinar si la ocurrencia del daño era de esperarse en el curso normal de un suceso o si, por el contrario, este queda fuera del cálculo. *Rivera Jiménez v. Garrido & Co. Inc.*, 134 DPR 840, 852 (1993).

### *Reglamento para el Transporte Comercial*

La Comisión del Servicio Público de Puerto Rico está facultada por la Ley Núm. 109 de 28 de junio de 1962, según enmendada, mejor conocida como "*Ley de Servicio Público de Puerto Rico*", 27 LPRA sec. 1001, para reglamentar y fiscalizar, entre otras, empresas "de vehículos privados dedicados al comercio, incluyendo todos los vehículos de motor comercial".[25] A base de este poder delegado y con la intención de adoptar las secciones 171-173, 177-178, 180, 390-393 y 395-397 del Título 49 del Código de Reglamentos Federales en Puerto Rico se aprobó el *Reglamento para el Transporte Comercial* de la Comisión del Servicio Público, Reglamento Núm. 7470 del 4 de marzo de 2008.

---

[24] *Hernández Vélez v. Televicentro*, supra; *Soc. Gananciales v. G. Padín Co., Inc.*, 117 DPR 94, 106 (1986).
[25] Artículo 14 de Ley Núm. 109 de 28 de junio de 1962, "*Ley de Servicio Público de Puerto Rico*", 27 LPRA sec. 1101.

En la Sección 1.04 del *Reglamento para el Transporte Comercial*, supra, se establece a que grupo de personas le será de aplicación esta normativa. En síntesis, será de aplicación la reglamentación a todo "patrono, empleado, conductor, **acarreador** público o privado, embarcador y vehículo de motor comercial, que transporte bienes o pasajeros por el comercio interestatal o interestatal". (Énfasis suplido).

La figura del acarreador esta definida como:

> ...una empresa pública o privada, dedicada a la transportación. El término acarreador incluye los agentes, oficiales y representantes del acarreador así como a empleados responsables de reclutar, supervisar, adiestrar o despacho de conductores, esto incluye también a los empleados responsables de la instalación, inspección y mantenimiento del equipo y/o accesorios de un vehículo de motor para propósitos de este Reglamento, la definición de acarreador incluye el término patrono.[26]

Esta figura es muy importante, pues según surge de la Sección 391.1 del *Reglamento para el Transporte Comercial,* supra, se les impone un deber mínimo a los acarreadores sobre la cualificación de sus conductores. Esto incluye cerciorarse que sus conductores estén físicamente cualificados según la Sección 391.41.

**III.**

En su recurso de *Apelación,* la parte apelante señala que erró el TPI al concluir que no existía una obligación en ley o reglamento que le impusiera a Oriental Sand & Gravel la obligación de asegurarse que el señor Cotto Martínez estuviera físicamente capacitado de acuerdo con el RTC para recibir la carga y manejar el camión Mack que habría de transportarla en el furgón.

Examinada *de novo* la *Solicitud de Sentencia Sumaria* y su *Oposición a Moción de Sentencia Sumaria,* acogemos las determinaciones de hechos no controvertidos realizadas por Oriental y avaladas por el TPI, por entender que estas se sostienen

---

[26] Sección 390.5 de *Reglamento para el Transporte Comercial* de la Comisión del Servicio Público, Reglamento Núm. 7470 del 4 de marzo de 2008.

en la prueba presentada por las partes en sus escritos. A base de estas determinaciones, concluimos que, tal y como resolvió el TPI, procedía la resolución sumaria de la causa de acción.

Debemos comenzar recordando que bajo una causa de acción en daños y perjuicios bajo el Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141, deben concurrir los siguientes requisitos: (1) la existencia de un daño real; (2) el nexo causal entre daño sufrido y la acción u omisión del demandado; y (3) que el acto u omisión es culposo o negligente.[27] Cuando dicha causa de acción es por omisión deben evaluarse los siguientes factores: (i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si de haberse realizado el acto omitido se hubiera evitado el daño.[28] Por otro lado, nuestro ordenamiento jurídico ha reconocido que para que exista el deber de indemnizar presupone la existencia de un nexo causal.[29]

Por los fundamentos antes expuestos concluimos que no le asiste razón a la parte apelante pues no surge de los anejos de los escritos, de la jurisprudencia bajo el derogado Artículo 1802 del Código Civil de 1930, *supra*, ni del *Reglamento para el Transporte Comercial*, supra, un deber jurídico por parte de Oriental sobre las actuaciones del señor Cotto Martínez. Como surge de los anejos, y como bien concluyó el TPI, no existe una relación contractual entre Oriental y Transporte León, LLC. ni mucho menos con su conductor, señor Cotto Martínez.[30] Al no existir dicha relación causal, Oriental no tenía un deber jurídico respecto al señor Cotto Martínez, pues su

---

[27] *Pérez et al. v. Lares Medical et al.*, supra; *López v. Porrata Doria*, 165 DPR 135, 150 (2006).

[28] *Hernández Vélez v. Televicentro*, supra; *Soc. Gananciales v. G. Padín Co., Inc.*, supra.

[29] *Estremera v. Inmobiliaria Rac, Inc.*, supra.

[30] Véase Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 91-114; Apéndice de la parte demandante-apelante, en el Anejo 8 págs. 441-446 y 450-477.

intervención se limitó a llenar con arena el furgón del camión de Transporte León, LLC.[31]

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[31] Véase Apéndice de la parte demandante-apelante, en el Anejo 6 págs. 91-114; Apéndice de la parte demandante-apelante, en el Anejo 8 págs. 450-477.