ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| SAYRA GARCÍA MUÑOZ, por sí y en representación de su hijo menor de edad SMVG<br><br>Apelante<br><br>v.<br><br>JAY RODRÍGUEZ BONANO, Fulana de tal y la Sociedad Legal de Bienes Gananciales que ambos componen; aseguradora ABC, Demandados XYZ<br><br>Apelados | KLAN202400088 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: E2CI201400891<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece ante *nos*, Sayra García Muñoz (García Muñoz), por sí y en representación de su hijo menor de edad, S.M.V.G. (en conjunto, la parte apelante) y nos solicitan que revisemos la *Sentencia* emitida el 20 de diciembre de 2023 y notificada el 28 de diciembre de 2023, por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas. Mediante dicho dictamen, el TPI declaró improcedente la *Demanda* y, en consecuencia, desestimó la misma.

Por los fundamentos que se exponen a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El 18 de diciembre de 2014, la parte apelante presentó una *Demanda* sobre daños y perjuicios en contra de Jay Rodríguez Bonano (parte apelada). En ajustada síntesis, alegó que sufrió daños y perjuicios luego de que, el 18 de diciembre de 2013, la parte apelada disparara y le ocasionara la muerte a Edwin Manuel Vélez

Número Identificador

SEN2024_____

Lara (Vélez Lara), pareja consensual de García Muñoz y padre del menor S.M.V.G. La parte apelante sostuvo que la parte apelada le disparó a Vélez Lara mientras se encontraba con otros tres (3) individuos en los predios de la residencia de Jorge Torres González, vecino del apelado, presuntamente realizando un escalamiento en la propiedad. Además, planteó que mientras Vélez Lara agonizaba en el suelo, la parte apelada impidió a los demás jóvenes comunicarse con el sistema de emergencias 9-1-1 para procurar asistencia médica. Consecuentemente, la parte apelante solicitó una compensación por los daños sufridos como consecuencia de las presuntas actuaciones negligentes e intencionales del apelado.

Luego de varias incidencias procesales, que no son necesarias consignar, el 25 de septiembre de 2018, la parte apelada presentó una *Contestación a Demanda*. En esencia, negó las alegaciones de la *Demanda* y levantó varias defensas afirmativas. Posteriormente, dio inicio el descubrimiento de prueba. El 27 de mayo de 2020, la parte apelada presentó una *Moción en Solicitud de Sentencia Sumaria*. Acto seguido, el 1 de julio de 2020, la parte apelante presentó una *Moción en Cumplimiento de Orden y Solicitud de Remedios*.

Consecuentemente, el 5 de marzo de 2021, el TPI emitió una *Sentencia Sumaria*. Inconforme, el 26 de marzo de 2021, la parte apelante presentó una *Moción de Reconsideración*. Ese mismo día, la parte apelada presentó una *Oposición a Reconsideración*. Oportunamente, el 12 de abril de 2021, el TPI declaró *No Ha Lugar* la solicitud de reconsideración. Insatisfecha con esa determinación, la parte apelante presentó ante este Tribunal un recurso de apelación. Atendido el recurso, un panel hermano de este Tribunal revocó la *Sentencia Sumaria* emitida por existir hechos materiales en controversia y devolvió el caso al TPI.

Subsiguientemente, el 7 de diciembre de 2023, se llevó a cabo el Juicio en su Fondo. El 20 de diciembre de 2023, el TPI emitió una *Sentencia,* notificada el 28 de diciembre de 2023, mediante la cual declaró *No Ha Lugar* la *Demanda* y, en consecuencia, desestimó con perjuicio la causa de acción.

Inconforme con esa determinación, el 29 de enero de 2024, la parte apelante acudió ante *nos* mediante un recurso de apelación y señaló la comisión de los siguientes errores:

**PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, Y ABUSO DE SU DISCRECIÓN AL DETERMINAR LA AUSENCIA DE CAUSALIDAD Y CONFUNDIR EL PESO PROBATORIO, EN CONTRAVENCIÓN AL DERECHO VIGENTE Y LA JURISPRUDENCIA APLICABLE.**

**SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, ABUSO DE SU DISCRECIÓN Y COMETIÓ ERROR MANIFIESTO EN DERECHO AL IMPEDIR EL CONTRAINTERROGATORIO DE LA PARTE DEMANDADA.**

**TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, ABUSO DE SU DISCRECIÓN Y COMETIÓ ERROR MANIFIESTO EN DERECHO AL ADJUDICAR LOS MÉRITOS DE SU CONTROVERSIA FUNDAMENTADA EN LA CUESTIÓN ÚLTIMA TESTIFICADA [SIC] POR PERITO.**

El 1 de febrero de 2024, emitimos una *Resolución* mediante la cual concedimos un término de veinte (20) días a la parte apelada para que presentara su alegato en oposición. El 5 de febrero de 2024, la parte apelada presentó una *Moción en Solicitud de Desestimación.* Oportunamente, el 20 de febrero de 2024, emitimos una *Resolución* mediante la cual declaramos *No Ha Lugar* la solicitud de desestimación y le concedimos un nuevo término de veinte (20) días a la parte apelada para que presentara su posición al recurso. Así, el 8 de marzo de 2024, la parte apelada presentó un *Alegato de la Parte Apelada.* Contando con el beneficio de la comparecencia de ambas partes, pasamos a resolver.

**II.**

**A. La causa de acción por daños y perjuicios**

El Artículo 1802 del Código Civil de Puerto Rico de 1930[1] (31 LPRA ant. sec. 5141) establece que: "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Como sabemos, en materia de daños y perjuicios, para que prospere una reclamación bajo el precitado artículo, tiene que darse la concurrencia de tres elementos básicos a saber: (1) un acto u omisión culposo o negligente del demandado (2) la presencia de un daño físico o emocional en el demandante y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Sucesión Mena Pamias et al. v. Jiménez Meléndez et al.*, 2023 TSPR 108, 212 DPR __ (2023). Véase, además, *Cruz Flores et al. v. Hospital Ryder et al.*, 210 DPR 465 (2022); *Pérez et al. v. Lares Medical et al.*, 207 DPR 965 (2021); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

El *acto culposo o negligente* se define como la falta del debido cuidado, según la figura de la persona de prudencia común y ordinaria. *Pérez et al. v. Lares Medical et al.*, *supra*; *López v. Porrata Doria*, 169 DPR 135, 150-151 (2006). Sobre el concepto de *culpa*, nuestro más alto Foro ha reiterado que consiste en no anticipar las consecuencias racionales de un acto u omisión. *López v. Porrata Doria*, *supra*, pág. 151. En cambio, la responsabilidad civil extracontractual producida por omisiones negligentes surge cuando el "[a]legado causante del daño quebranta un deber impuesto o reconocido por ley". *Hernández Vélez v. Televicentro*, 168 DPR 803, 813 (2006).

Por otra parte, *el daño* se compone de todo menoscabo material o moral que sufre una persona en sus bienes, propiedad o patrimonio, por el cual otra persona ha de responder. *García Pagán*

---

[1] Cualquier mención subsiguiente al Código Civil de Puerto Rico se entenderá que es a su edición de 1930, aplicable a los hechos del presente caso.

*v. Shiley Caribbean,* 122 DPR 193, 205-206 (1988). Es decir, el menoscabo puede infligirse en los bienes vitales naturales, la propiedad o el patrimonio del perjudicado. *Nieves Díaz v. González Massas, supra,* pág. 845. Ahora bien, el daño sufrido debe ser real y palpable, no vago o especulativo. *Soto Cabral v. ELA,* 138 DPR 298 (1995). El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. *García Pagán v. Shiley Caribbean,* 122 DPR 193, 206 (1988); *Rodríguez Cancel v. AEE,* 116 DPR 443, 455-456 (1985). Así pues, se requiere la existencia certera de un daño, pues de lo contario el reclamo sería especulativo y no adjudicable en derecho.

En cuanto al requisito de *relación causal,* el estándar aplicable es el de *causalidad adecuada.* La *doctrina de la causalidad adecuada* – la cual rige en Puerto Rico - dispone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Sucesión Mena Pamias et al. v. Jiménez Meléndez et al., supra; Nieves Díaz v. González Massas, supra.* La *relación causal* - imprescindible en una reclamación en daños y perjuicios- es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González* Massas, *supra,* págs. 844-845. Este concepto de la causa presupone que la ocurrencia del daño que da base a la reclamación sea *previsible* dentro del curso normal de los acontecimientos. *López v. Porrata Doria, supra,* págs. 151-152. Es por esto que, el deber de indemnizar requiere que haya un nexo causal entre el daño y el hecho que lo originó, pues solo se indemnizarán los daños que sean consecuencia del hecho que obliga a la indemnización. *Estremera v. Inmobiliaria Rac. Inc.,* 109 DPR 852, 856 (1980). Así pues, un daño podrá considerarse como el resultado probable y natural de un acto u omisión negligente, si luego del

suceso -mirándolo retrospectivamente- éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. *Santiago v. Supermercados Grande,* 166 DPR 796, 818 (2006).

Los conceptos de *negligencia* y *causalidad adecuada* exigen que, de algún modo, se cumpla con el criterio de previsibilidad. No obstante, para fines de la negligencia, lo importante es identificar si el demandado podía prever que su acción u omisión podría causar algún daño. En otro sentido, con el propósito de determinar si existe causa legal o adecuada, hay que evaluar si el demandado podía prever que su acción u omisión podría causar el tipo de daño que se produjo. *Colón Pérez v. Televicentro de Puerto Rico,* 175 DPR 690, 707 (2009).

Sin embargo, no es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia *natural y probable* del acto *u omisión negligente. Tormos Arroyo v. DIP,* 140 DPR 265, 276 (1996). La omisión que genera responsabilidad civil por negligencia es aquella conducta que constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley, cuando de haberse realizado el acto omitido se hubiera evitado el daño. *Soc. Gananciales y. González Padín, Co.,* 117 DPR 94, 106 (1986). Es decir, ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño. *Arroyo López v. E.L.A.,* 126 DPR 682, 686-687 (1990).

### B. Abuso de discreción

Nuestro Tribunal Supremo ha establecido que, los tribunales apelativos no interferirán con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que estos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en

la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*. Por lo cual, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, *supra*; *Lluch v. España Service Sta.*,117 DPR 729, 745 (1986).

En lo pertinente, nuestro máximo Foro ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, *supra*; *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). Así pues, el ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, *supra*. Conforme a lo anterior, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. Íd. Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

Asimismo, se ha señalado que un tribunal abusa de su discreción:

> cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en este, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*.

### C. La apreciación de la prueba

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 740 (2007); *Rolón v. Charlie Car Rental, Inc.*,

148 DPR 420, 433 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de Procedimiento Civil (32 LPRA Ap. V). Véase, además, *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 817 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431, 448-449 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de

evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que dicho foro, es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR, supra*; *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Ramos Acosta v. Caparra Dairy Inc.*, 113 DPR 357, 365 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de Procedimiento Civil, *supra*; *Rivera Menéndez v. Action Services, supra*, págs. 448-449; *Monllor Arzola v. Sociedad de Gananciales*, 138 DPR 600, 610 (1995). No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172, 181 (1985).

### D. Peso de la prueba

Es principio cardinal de nuestro ordenamiento jurídico que el peso, o la responsabilidad, de probar o presentar prueba que sustente su postura, recae sobre aquel que promueve una acción. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011). Con relación a esto, la Regla 110 de las Reglas de Evidencia de Puerto Rico (32 LPRA Ap. VI), establece, entre otras cosas, que la obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia. Así, según las exigencias de la Regla 110 de las Reglas de Evidencia, *supra*, los hechos no se prueban con meras alegaciones. *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001 (2012).

Así pues, según establece el profesor Ernesto L. Chiesa Aponte, "[e]l lenguaje de la regla resulta filosóficamente correcto, pues quien afirma la existencia de algo, tiene la obligación de presentar evidencia para demostrarlo". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 49. Esto responde al entendido jurídico de que el peso de la prueba es una obligación que tiene la parte que afirma la cuestión en controversia, de convencer al juzgador sobre la forma particular en que ocurrieron los hechos que alega. *Rivera Figueroa v. The Fuller Brush Co., supra,* pág. 913.

**III.**

Por estar estrechamente relacionados discutiremos los tres (3) señalamientos de error de forma conjunta.

En el caso que nos ocupa, la parte apelante planteó que incidió el TPI y abusó de su discreción al determinar la ausencia de causalidad y confundir el peso probatorio, en contravención al derecho vigente y la jurisprudencia aplicable. Señaló, además, que erró el TPI y cometió error manifiesto en derecho al impedir el contrainterrogatorio de la parte apelada. Por último, indicó que incidió el TPI, abusó de su discreción y cometió error manifiesto en derecho al adjudicar los méritos de su controversia fundamentada en la cuestión última testificada por el perito.

De una lectura puntillosa de la *Sentencia* apelada surge que, la parte apelante no estableció mediante preponderancia de la prueba: si en la residencia únicamente se encontraba Ramón B. Vega Ramos, Argenis Villar Castro y Vélez Lara; y si el joven del que se desconoce la identidad se encontraba en las afueras de la urbanización; si la parte apelada se percató de lo que sucedía en casa de su vecino, pero no llamó a la policía; si, a pesar de que la parte apelada poseía licencia de portación de armas y es ex militar, tiene amplio conocimiento en el manejo de armas de fuego y adiestramiento de como lidiar ante situaciones difíciles y peligrosas;

si el apelado conocía que era su deber llamar a los agentes del orden público, pero, no obstante este optó por no informar a las autoridades pertinentes, y en un acto de menosprecio de su propia vida y la de terceros, tomó su arma de fuego y caminó a la residencia de su vecino; si el joven Ramón E. Vega Ramos, quien se encontraba en la acera, fue encañonado por el apelado y obligado a entrar a la residencia de Jorge Torres González; si al entrar a la residencia, el fenecido Vélez Lara, sin percatarse que el apelado se encontraba dentro de la casa, salió de una de las habitaciones y fue sorprendido con dos (2) balazos que le realizó el apelado con su arma de fuego, ocasionándole graves daños, sin este haber agredido, amenazado o intentado ocasionar daño al apelado, si el fenecido Vélez Lara no poseía arma de fuego ni ningún otro instrumento que pudiera amenazar o causar daño de alguna manera al apelado; si mientras el joven Vélez Lara se encontraba en agonía en el suelo, el joven Ramón B. Vega Ramos le suplicaba al apelado que llamara al 9-1-1 a lo que este último le replicó que no haría; si el apelado procedió a llamar a la policía y a emergencias médicas cuando Vélez Lara falleció, a sabiendas de que había realizado tarde la llamada; si la muerte de Vélez Lara fue a propósito o producto de defensa propia; si el apelado utilizó un medio razonable al entender que su vida corría peligro; como por ejemplo el haber herido al fenecido en alguna extremidad que lo paralizara y no le ocasionara la muerte; si el apelado penetró la propiedad a sabiendas que su vida podría correr peligro y sin llamar a las agencias pertinentes; si los daños y perjuicios sufridos por la parte apelante se deben a las acciones del apelado de ocasionar la muerte a un joven de 23 años, que pudo haber rehabilitado sus acciones y ser un mejor ejemplo para sus hijos; si el apelado actuó en legítima defensa ante el atentado contra su vida por Vélez Lara, a pesar de no haber presentado evidencia que acredite este hecho.

Surge del derecho que antecede que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Artículo1802 del Código Civil de Puerto Rico de 1930, *supra*. Así, para que prospere una reclamación bajo el precitado artículo, tiene que darse la concurrencia de tres elementos básicos a saber: (1) un acto u omisión culposo o negligente del demandado (2) la presencia de un daño físico o emocional en el demandante y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Sucesión Mena Pamias et al. v. Jiménez Meléndez et al., supra*. En consecuencia, en el caso ante *nos* le correspondía a la parte apelante probar la concurrencia de los tres (3) elementos básicos mediante preponderancia de la prueba para que prosperara su causa de acción. Sin embargo, durante el Juicio, la parte apelante no logró establecer algún acto u omisión culposo o negligente por parte del apelado, ni una relación causal entre el daño sufrido por la apelante y el acto u omisión.

Así pues, surge de la prueba presentada, que durante el Juicio la parte apelante se limitó a presentar su propio testimonio, aun cuando no tiene conocimiento de todos los hechos del caso, pues no estuvo en la escena donde ocurrió el crimen. Esto, a pesar de que había otros testigos con conocimiento específico de los hechos; de los cuales ninguno compareció al Juicio. Además, la parte apelante conocía cuales eran los hechos que estaban en controversia y que debía probar, pues así surge de la *Sentencia* emitida por un panel hermano nuestro en el caso KLAN202100333. En dicha *Sentencia*, específicamente, se dispuso en la página 21 que: "la controversia medular del presente caso versa sobre si el [apelado] mediante actuación culposa o negligente tuvo la intención de ocasionarle la muerte al señor Edwin M. Vélez Lara; esto a su vez para que pueda

ser exitosa la causa de acción de la apelante sobre daños y perjuicios".

Por consiguiente, no incidió el TPI al desestimar con perjuicio la *Demanda* en cuestión. Tampoco, abusó de su discreción al determinar la ausencia de causalidad, ni confundió el peso probatorio. Es decir, la determinación del TPI no está desprovista de una base razonable. Pues, del expediente ante *nos* no se desprende que la Jueza de instancia haya descartado injustificadamente elementos probatorios importantes o que haya fundado su criterio en testimonios improbables o imposibles.

Finalmente, debemos resolver si incidió el TPI al presuntamente impedir el contrainterrogatorio del apelado y al presuntamente adjudicar los méritos de la controversia fundamentada en la cuestión última testificada por el perito. De un examen minucioso de la Transcripción de la Vista, específicamente, del contrainterrogatorio del apelado surge que la defensa de la parte apelante le preguntó al apelado: "[u]sted el dieciocho (18) de diciembre de dos mil trece (2013), ¿se encontraba ahí en donde usted vive en Savannah Real? Ante la pregunta del Lcdo. Velázquez Grau, la defensa de la parte apelada objetó la pregunta, objeción que fue declarada *Ha Lugar* por el TPI. Luego, de varios argumentos de ambos representantes legales, el Lcdo. Velázquez Grau decidió no realizarle más preguntas a la parte apelada.

Así, es nuestra postura que el TPI no impidió el contrainterrogatorio del apelado. La parte apelada hizo una objeción oportuna y específica, el TPI en su sana discreción la declaró *Ha Lugar* y la parte apelante tuvo la oportunidad de continuar realizando preguntas y no lo hizo "porque le cerraron la puerta".

No debemos perder de perspectiva que, "el contrainterrogatorio se limitará a la materia objeto del interrogatorio directo y a cuestiones que afecten la credibilidad de testigos". Regla

607 de las Reglas de Evidencia de Puerto Rico (32 LPRA Ap. VI). En el caso de epígrafe, las preguntas que la representación legal de la parte apelante podía realizar debían circunscribirse a las preguntas que se realizaron en el interrogatorio directo o en la alternativa, el TPI en el ejercicio de su sana discreción podía permitir preguntas como si fuese un interrogatorio directo.

De otro lado, es menester dejar claro que el Fiscal Ángel García Rodríguez, compareció como testigo y no como perito. Es decir, su testimonio no era uno de naturaleza pericial. El Fiscal Ángel García Rodríguez tuvo a su cargo la investigación criminal de los hechos que motivaron la *Demanda* de epígrafe. Así pues, fue el TPI quien tuvo la oportunidad de escuchar su testimonio, observar su comportamiento y reacciones y adjudicarle la credibilidad que le merecía. *Ramírez Ferrer v. Conagra Foods PR, supra.*

Por lo tanto, no coincidimos con el señalamiento de error que realizó la parte apelante en su recurso al esbozar que el TPI adjudicó los méritos de la controversia fundamentada en la cuestión última testificada por el perito. Pues, en primer lugar, el Fiscal Ángel García Rodríguez no compareció como testigo y, en segundo lugar, el TPI no adjudicó los méritos de la controversia únicamente con su testimonio. En conclusión, no incidió el TPI al desestimar con perjuicio la *Demanda* de autos, no se cometieron ninguno de los errores señalados.

**IV.**

Por los fundamentos antes expuestos, los que se hacen formar parte de este dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones